575 A.2d 94

COMMONWEALTH of Pennsylvania, Appellant (at No. 9)

v.

STATE CONFERENCE OF STATE POLICE LODGES OF the FRATERNAL ORDER OF POLICE, By and Through its Trustee Ad Litem, Paul McCOMMONS, President, Appellant (at No. 8).

Supreme Court of Pennsylvania.

Argued March 8, 1990.

Decided May 11, 1990.

Gary M. Lightman, Anthony C. Busillo, II, Harrisburg, for appellant at No. 8.

Frank A. Fisher, Jr., Chief Counsel, Office of Administrator, Jerome J. Shestack, James D. Crawford, Philadelphia, Steve D. Shadowen, Harrisburg, for appellant at No. 9.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

These are cross-appeals by both parties from a Commonwealth Court order vacating in part an arbitration award under Act 111[1] which decided the terms of employment of the Pennsylvania State Police for the contract period July 1, 1988 to June 30, 1990. We must reverse the judgment of the Commonwealth Court on three of the issues raised in this Court.

In April, 1987, the State Conference of State Police Lodges of the Fraternal Order of Police (FOP) initiated collective bargaining for a successor agreement to its 1986–88 contract with the Commonwealth which governed state

---

1. Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. § 217.1 et seq., also known as the Collective Bargaining for Policemen and Firemen Act.

police personnel throughout the state. In July, 1987, the FOP declared an impasse in the negotiations. Accordingly, it invoked the mandatory and binding arbitration provisions of section 4 of Act 111 which are available when an impasse is reached between a public employer and its police personnel during the collective bargaining process.

A board of arbitration was appointed, and it held four evidentiary hearings and received sundry documents. Based on this evidence, the arbitrators awarded increased benefits to the state police. Among other things, an across-the-board pay raise of $2,000 per annum was to be implemented over the two-year contract. A substantial increase in pension benefits was ordered; conjoined with this term, it was ordered that if the pension increase were to be judicially overturned or held to be void, it would be replaced by an across-the-board base pay increase of $1,000. The arbitration award also permitted police officers an election of remedies when charged with offenses subject to court-martial proceedings—the officers were henceforth to be permitted to select grievance arbitration as an alternative to a court martial. Finally, the award included all ranks of police officers up through lieutenant colonel as part of the bargaining unit which benefitted from the new agreement.

The Commonwealth appealed to the Commonwealth Court, challenging the arbitration award. A divided *en banc* panel of the court vacated portions of the award due to perceived transgressions of the statutory limitations on collective bargaining agreements under Act 111. The appeals now require us to decide whether the Commonwealth Court erred in holding that: (1) the Retirement Code, 71 Pa.C.S. § 5955, precludes Act 111 arbitration over pension benefits; (2) the Commonwealth Court had jurisdiction to rule in the first instance on the appropriateness of the bargaining unit; and (3) the election of remedies provision, providing grievance arbitration as an alternative method for challenging offenses subject to court-martial proceedings, was invalid and unenforceable.

## Pension Arbitrability

■ The Commonwealth's first argument is that there is a statutory prohibition against the arbitration of pension benefits. It is claimed that, although Act 111 appears to permit bargaining over pension benefits, part of the State Employees' Retirement Code [2] clearly prohibits such benefits from being the subject of negotiations under Act 111. Title 71 Pa.C.S. § 5955 states, in pertinent part: "Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein." At the time of its passage, the State Employees' Retirement Code contained a repealer, section 2(d) of the pamphlet law, which stated:

(d) The following acts are repealed in so far as inconsistent with the provisions of section 5955 (relating to construction of part):

Act of June 24, 1968 (P.L. 237, No. 111), entitled "An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators."

The Commonwealth argues that this repealer obviously precludes bargaining, pursuant to Act 111, over pension benefits, which, pursuant to the Retirement Code, cannot be changed by collective bargaining agreement but shall be determined solely by the Retirement Code or amendments thereto.

We are not persuaded by this argument. Quite simply, the statute does not prohibit bargaining over pension benefits, nor does it prohibit pension benefits from being affected by arbitration awards. The Retirement Code prohibits only *collective bargaining agreements* from determining pension rights.

2. Act of March 1, 1974, P.L. 125, No. 31, as amended, 71 Pa.C.S. § 5101 et seq.

■ We have no reason to question or reject this legislative distinction. Article 3, section 31 of the Pennsylvania Constitution explicitly enables arbitrators to force the legislature to fund the cost of a contract for the state police. The constitution authorizes the General Assembly to enact laws

> which provide that the findings of panels and commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes ... between policemen and firemen and their public employers shall be binding upon all parties *and shall constitute a mandate ... to the lawmaking body ... of the Commonwealth,* with respect to matters which require legislative action, *to take the action necessary to carry out such findings.*

(Emphasis added.) This the legislature has done in Act 111, which contains language tracking that of the state constitution, set forth in sections one and four of the act, 43 P.S. §§ 217.1 and 217.4. Section one provides: "Policemen ... employed ... by the Commonwealth shall ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, *pensions* and other benefits...." Section four authorizes the appointment of an arbitration board to resolve an impasse in bargaining. It then adds:

> The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... Such determination shall constitute a mandate ... to the lawmaking body ... of the Commonwealth with respect to matters which require legislative action, to take the action necessary to carry out the determination of the board of arbitration.

It therefore seems clear that an arbitration board has the authority, both constitutional and statutory, to issue an award affecting police pension benefits, and such an award

is a mandate to the legislature to enact whatever legislation is necessary to implement or fund the arbitration award.

To adopt the Commonwealth's argument would be to interject into the Retirement Code the phrase "nor any arbitration award," so that 71 Pa.C.S. § 5955 would read: "Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement *nor any arbitration award* between the Commonwealth and its employees shall be construed to change any of the provisions herein." It is not only unnecessary, but it is impermissible, for us to rewrite the statute in such a fashion.

Another aspect of the Commonwealth's argument is answered succinctly in the dissenting and concurring opinion by Judge Craig in the Commonwealth Court:

> To contend, as the Commonwealth does, that pension arbitration for the state police was eliminated from Act 111 by the Retirement Code's repealer of Act 111 "insofar as inconsistent with the provisions of section 5955," is to beg the question. Section 5955 presents no inconsistency with the binding arbitration provisions of Act 111, unless words about arbitration are injected into section 5955, where they cannot now be found.

*Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police,* 117 Pa.Cmwlth. 564, 580, 546 A.2d 697, 705 (1988).

We therefore conclude that the arbitration award granting increased pension benefits to the state police was constitutionally and statutorily permissible, and it was error for the Commonwealth Court to vacate this portion of the award.

### The Bargaining Unit

The second issue is whether the Commonwealth Court had jurisdiction to determine the appropriateness of the bargaining unit, and, if so, whether the court was correct in rejecting the scope of the bargaining unit subject to the arbitration award. At stake is whether all officers through

the rank of lieutenant colonel should be included in the bargaining unit, or whether, as the Commonwealth maintains, the bargaining unit should consist only of troopers and corporals, excluding sergeants, lieutenants, captains, majors, and colonels, because the latter ranks are management personnel.

■■■ It is clear that the Pennsylvania Labor Relations Board has exclusive jurisdiction to determine the appropriateness of a bargaining unit. *See, e.g., Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977). In the absence of PLRB certification of a unit, an arbitration board or a court has no authority to alter a unit which has been contractually defined. The Commonwealth Court's assumption of such authority due to lack of PLRB certification was erroneous, evincing a lack of attention to the statutory differences between Act 111 and the Public Employe Relations Act (PERA).[3]

■■■ The critical distinction as it relates to bargaining units under the two acts is that PERA requires that PLRB certification be obtained prior to initiation of the bargaining process, 43 P.S. §§ 1101.602 and 1101.603, whereas Act 111 provides that designation of a representative by fifty percent or more of the members is sufficient to establish the obligation to bargain, 43 P.S. § 217.1. Lack of PLRB certification in this case, therefore, is not a defect in the proceedings, for Act 111, not PERA, controls, and more than fifty percent of the state police designated the FOP as their labor representative.

■■■ Under neither PERA nor Act 111 does an appellate court have jurisdiction to determine the appropriateness of the bargaining unit in the first instance. Although Act 111 does not require PLRB certification prior to bargaining, the act permits PLRB certification of the bargaining unit. The PLRB thus has original jurisdiction to establish the

3. Act of July 23, 1970, P.L. 563, No. 195, art. I, § 101, 43 P.S. § 1101.101 et seq., also referred to as "Act 195."

classifications of employees who are included within the bargaining unit under both PERA and Act 111. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, id.* The proper forum for challenging the bargaining unit designated by the employees is the PLRB, not the board of arbitration nor the appellate court.[4] It was error, therefore, for the Commonwealth Court to overturn the bargaining unit designated by the employees and contractually defined by the parties to this litigation.

### Election of Remedies

■ The final issue is whether the award of the board of arbitration, permitting grievance arbitration as an alternative method for challenging offenses which are also subject to court-martial proceedings, is valid and enforceable. The Commonwealth's opposition to this aspect of the arbitration award is, essentially, the argument that the statutory court-martial scheme, set forth in the Administrative Code,[5] is so detailed and comprehensive that the legislature must have intended to prohibit any alternative means of dealing with offenses subject to court martial. The FOP, on the other hand, argues that nothing in the Administrative Code would preclude grievance arbitration as an alternative to a court martial, and that our holding in *Board of Education v. Philadelphia Federation of Teachers Local No. 3*, 464 Pa. 92, 346 A.2d 35 (1975), would permit grievance arbitration.

The Administrative Code, in 71 P.S. § 251, does indeed provide a detailed court-martial procedure, yet we perceive it as being comparable in substance to the provisions of the Public School Code[6] which allegedly vitiated the grievance arbitration procedures which we upheld in *Board of Edu-*

---

**4.** Indeed, the Commonwealth petitioned the PLRB for such a unit clarification, attempting to exclude the ranks of sergeant and above from the bargaining unit. The Commonwealth, however, requested leave to withdraw the petition on March 28, 1989, and on April 7, 1989, the PLRB granted the request, leaving the contractually-defined unit intact.

**5.** Act of April 9, 1929, P.L. 177, art. VII, as amended, 71 P.S. § 251.

**6.** Act of March 10, 1949, P.L. 30, art. V, § 510, 24 P.S. 5–510 (1962).

*cation, supra.* In the face of arguments fundamentally the same as those presented by the Commonwealth in this case, we upheld a collective bargaining agreement which permitted grievance arbitration of disputes over discipline or discharge though the public employer argued that such disputes were the province of the board of education pursuant to the Public School Code. Our rationale in that case is instructive:

Moreover, the collective bargaining agreement is susceptible of at least two constructions which fully protect the authority of the board. These stem from consideration of the procedure formerly in effect.

When a school board heretofore sought to dismiss a non-tenured teacher, the teacher was notified of the charges and afforded a hearing before the board, which then acted upon the proposed dismissal. As this Court stated in *Brentwood Borough School District Appeal,* 439 Pa. 256, 262–63, 267 A.2d 848, 851 (1970):

"At the hearing the board plays a dual role. It acts as both prosecutor and as judge, and because of this it can never be totally unbiased."

The defects of this procedure from the standpoint of the teacher have long been evident. While there is an opportunity for judicial review of the discharge, it is limited to determining whether

"the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of this act have been violated in the proceeding before the agency, or that any finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence."

Local Agency Law, supra, § 8, 53 P.S. § 11308. This type of review is, of course, no substitute for an impartial fact-finder in the first instance.

One possible construction of the collective bargaining agreement is that the "just cause" standard for discharge is identical with the statutory enumeration of reasons

justifying such action. On this construction, all that the parties would have done is substitute a hearing before an impartial arbitrator for the hearing before the board and subsequent judicial review under the Local Agency Law. From the standpoint of the parties, this would have the advantage of providing an inexpensive and expeditious procedure in addition to an impartial fact-finder.

An alternative construction is suggested by the brief for the union. It suggests that the term "just cause," as used in the agreement, contemplates the possibility of discharges for a wider variety of reasons than those enumerated in the statute. Thus, an employee who elects to pursue the grievance procedure rather than proceeding to a hearing before the board would accept a less restrictive substantive standard in return for the greater procedural advantages afforded by the arbitration proceeding.

We see no reason why either of the constructions here suggested would involve violation of any legal restriction upon the power of the board, and the board offers none.

*Board of Education,* 464 Pa. at 103–05, 346 A.2d at 41–42 (footnotes omitted).

Like the school board in *Board of Education,* the Commissioner of Pennsylvania State Police plays a "dual role" in a court martial—he is required to furnish a detailed written statement of charges and then makes the ultimate decision on the merits. 71 P.S. § 251(b)(1) and (2).

Courts martial of Pennsylvania State Police held under the Administrative Code, similar to the board of education disciplinary proceedings under the Public School Code, are subject to judicial review under the Administrative Agency Law;[7] courts martial are therefore subject to the same limited standard of review, 2 Pa.C.S. § 704, as the teachers' disciplinary proceedings in the *Board of Education* case. As we said there, that type of review is no substitute for an impartial fact-finder in the first instance.

7. Act of April 28, 1978, P.L. 202, No. 53, § 5, as amended, 2 Pa.C.S. § 501 et seq.

The alternative of grievance arbitration in addition to court martial in no way detracts from the Commissioner's authority to establish rules and regulations to retain employment in the state police or to set forth grounds for discharge. Neither does the procedure inhibit the Commissioner's ability to prefer charges and recommend discharge. The arbitration award merely adds the alternative of a hearing before an impartial arbitrator to the remaining alternative of accepting a court martial. Like the Public School Code, there are no provisions in the Administrative Code which preclude such a procedure.

We must be careful to avoid inappropriate connotations which might be derived from military courts martial. Although the term "court martial" justifiably emphasizes the paramilitary aspects of uniformed service in the generally-regarded prestigious Pennsylvania State Police, serving as a state trooper is more akin to holding a civilian job than true military service in the national defense. The fundamental distinction derives from the indentured nature of military service such that a soldier may be impressed into service and may not resign at will. A state trooper, on the other hand, may decide on a whim to abandon his job and never return to work. He would be subject to "court martial," but the ultimate sanction would be discharge from employment. A soldier would theoretically be exposed to the ultimate sanction of execution by firing squad if he abandoned his job under circumstances which could be characterized as desertion in the face of the enemy. Bearing in mind this distinction, we do not deem state police "court-martial" proceedings to be sacrosanct, but rather to involve employment-related disciplinary matters which may appropriately be referred to grievance arbitration.

We therefore reverse the judgment of the Commonwealth Court which held the grievance arbitration of disciplinary proceedings to be repugnant to the mandate of the Administrative Code, 71 P.S. § 251.