588 A.2d 83

**Richard K. HENSHEY, Appellant,**

**v.**

**TOWNSHIP OF LOWER MERION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1990.

Decided March 6, 1991.

Alexander A. DiSanti, with him, Joseph W. Chupein, Jr., Richard, DiSanti, Hamilton & Gallagher, Media, for appellant.

Gilbert P. High, Jr., High, Swartz, Roberts & Seidel, Norristown, for appellee.

Anthony C. Busillo, II, The Law Firm of Gary M. Lightman, Harrisburg, for amicus curiae, Pennsylvania State Lodge, Fraternal Order of Police.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

Before us for review is an order of the Court of Common Pleas of Montgomery County which granted the application of the Township of Lower Merion (Township) to stay an arbitration proceeding over the issue of the discharge of police officer Richard K. Henshey.

The pertinent facts are as follows. Notice of Henshey's discharge was delivered to him on December 22, 1988, and involved an incident which occurred on December 6, 1988. The statement of charges against Henshey alleged that on December 6 he refused to obey a direct order by his superior, Captain Joseph Daly, to write a corrected police report of a previous incident which had occurred on November 19, 1988 involving himself and several other police officers. In December of 1988, Henshey would have been entitled to a hearing pursuant to the civil service provisions

of The First Class Township Code (Code).[1] Section 645 [2] of that Code reads as follows:

### Hearings on dismissals and reduction

If the person suspended, removed or reduced in rank shall demand a hearing by the [civil service] commission, the demand shall be made to the commission. Such person may make written answers to any charges filed against him not later than the day fixed for hearing. The commission shall grant him a hearing which shall be held within a period of ten days from the filing of charges in writing.

. . . .

In the event the commission shall sustain the charges and order the suspension, removal or reduction in rank, the person suspended, removed or reduced in rank shall have immediate right of appeal to the court of common pleas of the county and the case shall there be determined as the court deems proper.

Henshey, however, waived this right to such a hearing and instead opted to utilize the grievance procedure provided in the collective bargaining agreement (CBA) between the Fraternal Order of Police and the Township which became effective on January 1, 1989. Although the incident over which Henshey was disciplined occurred in 1988, Henshey did not file his grievance until January 3, 1989 during the term of the CBA.

Henshey's right to proceed to arbitration under the CBA, rather than to appeal through the legislatively provided hearing, is the principal issue raised by him in this appeal. The trial court held, that reading Section 625 of the Code [3] "in tandem with Section 645, *supra*, it is manifest that the exclusive remedy to challenge the validity of a police offi-

1. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 55101–58502.
2. 53 P.S. § 55645.
3. 53 P.S. § 55625.

cer's dismissal is through the Civil Service Commission." Section 625 of the Code pertinently provides:

> No person shall hereafter be suspended, removed or reduced in rank as a paid employe in any police force or as a paid operator of fire apparatus of any township, except in accordance with the provisions of this subdivision.

■ The issue is further complicated by the fact that at the time of his discharge, on December 22, 1988, there was an interest arbitration award in effect (1986 Award),[4] which governed any grievance procedure during its term, *i.e.,* from January 1, 1986 to December 31, 1988 and, although the grievance and arbitration procedure under both the 1986 Award and the CBA are identical, *IF* the arbitration of Henshey's discharge was contrary to explicit statutory law or, *IF* the arbitration procedure was in conflict with a fundamental statutory scheme granting exclusive authority over discipline to the Civil Service Commission, then a board of arbitration, even under Act 111,[5] would be prohibited from including such a provision in its award, *Chirico v. Board of Supervisors for Newtown Township,* 504 Pa. 71, 470 A.2d 470 (1983); *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). Under such circumstances the Township could enjoin its implementation because an arbitration panel may not mandate that a governing body carry out an illegal act.

■ On the other hand, if the arbitration was pursuant to a collective bargaining *agreement,* even if it were illegal as contrary to statute or a fundamental statutory scheme, the Township would be estopped from asserting its illegality, because the Township had voluntarily agreed to such a provision. *Chirico; Fraternal Order of Police v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982). As the Supreme Court stated in *Chirico:*

**4.** This award was arbitrated pursuant to the Act of June 24, 1968, P.L. 237, (Act 111) 43 P.S. §§ 217.1–217.10.

**5.** See note 4.

In *Hickey*, mandamus was sought to enforce a collective bargaining agreement provision voluntarily agreed to by the City of Scranton during the bargaining process. We held that good faith bargaining is not met by permitting the governmental employer to avoid its obligations by subsequently raising the question of legality of the *agreed* to provision; thus, the governmental employer is estopped from raising the defense. Here the contested provisions were as a result of an arbitration award and not an agreement voluntarily entered into by the parties. Thus, there is no basis for applying the equitable principle of estoppel when the provision sought to be enforced is an award provision. Therefore, when a party to an award of an arbitration panel seeks to have enforcement of an alleged illegal provision of such an award, the courts of this Commonwealth may not enforce that provision without a determination as to its legality. (Emphasis in original.)

504 Pa. at 77–78, 470 A.2d at 474.

The grievance and arbitration clause in the CBA was, as we stated, adopted directly from the 1986 Award. The wording of the clause in the two documents was identical and read as follows:

GRIEVANCE AND ARBITRATION PROCEDURE

. . . .

A grievance shall be defined as any dispute involving the application or interpretation of this Agreement, including matters of discipline. The election of a grievant to pursue any such dispute under this procedure shall constitute a waiver of his/her right to pursue such dispute in any other forum, and the election of a grievant to pursue any such dispute in any other forum shall constitute a waiver of his/her right to pursue such dispute under this procedure.

The common pleas court first determined that Henshey's grievance fell under the 1986 Award, rather than under the CBA, and further held that the arbitration clause in the

1986 Award was illegal because the right to arbitrate matters of police discipline was in direct conflict with Sections 645 and 625 of The First Class Township Code. The trial court, relying on this Court's decision in *Commonwealth of Pennsylvania v. State Conference of State Police Lodges of the Fraternal Order of Police, (State Conference of State Police I)*, 117 Pa.Commonwealth Ct. 564, 546 A.2d 697, (1988), determined that the Code provisions and civil service hearing procedure was the exclusive remedy for adjudicating police disciplinary matters. In *State Conference of State Police I*, we held that the court martial procedure required under Section 711 of The Administrative Code of 1929,[6] in matters of discipline and dismissal of state police, was exclusive because it was fundamental to a statutory scheme and we set aside a provision in an arbitration award which gave the state police the right of election to choose between court martial proceedings and a grievance procedure culminating in binding arbitration.[7]

The Supreme Court, however, in *Commonwealth of Pennsylvania v. State Conference of State Police Lodges of the Fraternal Order of Police (State Conference of State Police II)*, 525 Pa. 40, 575 A.2d 94, (1990), subsequent to the trial court's decision in the case sub judice, reversed this decision and held that state police are entitled to an election of remedies, *i.e.*, the alternative of grievance arbitration rather than statutory court martial procedure. The Supreme Court opined:

> The alternative of grievance arbitration in addition to court martial in no way detracts from the Commissioner's

6. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 251.

7. The rationale of the Commonwealth Court in *State Conference of State Police I,* succinctly stated, was:
   [W]here matters of police discipline are at issue, the impact upon the public can be especially great and we believe that by repositing in the Commissioner of the State Police the sole responsibility to determine the ultimate outcome of such discipline, the legislature made the court martial proceeding an essential and integral part of a fundamental statutory scheme.
   117 Pa.Commonwealth Ct. at 575–76, 546 A.2d at 703.

authority to establish rules and regulations to retain employment in the state police or to set forth grounds for *discharge*. Neither does the procedure inhibit the Commissioner's ability to prefer charges and recommend *discharge*.[8] The arbitration award merely adds the alternative of a hearing before an impartial arbitrator to the remaining alternative of accepting a court martial. Like the Public School Code, there are no provisions in the Administrative Code which preclude such a procedure.

... Bearing in mind this distinction, we do not deem state police 'court-martial' proceedings to be sacrosanct, but rather to involve employment-related disciplinary matters which may appropriately be referred to grievance arbitration. (Emphasis added.)

525 Pa. at 52, 575 A.2d at 100.

It would follow, therefore, by analogy to the disciplinary procedure appropriate for members of the state police, that in matters of discipline of local police officers the civil service provisions under The First Class Township Code are also not "sacrosanct" for they also would involve employment-related disciplinary matters which may appropriately be referred to grievance arbitration pursuant to Act 111.

The judgment of the common pleas court, therefore, although correct on this point of law at the time the court issued its opinion, is now in error and we are obliged to reverse. In summary, if grievance arbitration of discipline of members of the state police force is not contrary to the

---

**8.** Although not briefed by the parties as a separate issue, the common pleas court determined that the phrase "including matters of discipline" used in the arbitration clause in both the 1986 Award and the CBA would not include the "discharge" of police officers. *See Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983) (holding, *inter alia*, that the term "discipline" as used in a collective bargaining agreement did not include the "dismissal" of teachers). The holding of the Supreme Court in *State Conference of State Police II* would seem to clearly indicate that the Court, when dealing with matters of police discipline under the statutory law of Pennsylvania, considers the term "discipline" to be all inclusive.

statutory scheme of the Administrative Code, including its provisions for court martial proceedings for the state police, we logically must hold that the civil service appeal structure for members of a local police force,[9] are likewise not part of a fundamental statutory scheme.

Applying this principle of law, it is obvious that whether we apply the arbitration clause under the 1986 Award, or the identical clause contained in the CBA, since the arbitration of this disciplinary matter would not be contrary to explicit statutory law nor contradict a fundamental statutory scheme, the arbitration clause must be upheld.

Accordingly, the judgment of the common pleas court is reversed and this matter must be permitted to proceed to arbitration.

## ORDER

NOW, March 6, 1991, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby reversed.

---

9. *See, e.g.,* Sections 1171–1195 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 46171–46195; Sections 4401–4410 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 39401–39410; for certain Second Class Townships or Boroughs and First Class Townships having police forces with less than three members, *see* Act of June 15, 1951, P.L. 586, *as amended* (Police Tenure Act), 53 P.S. §§ 811–816. *See also George v. Moore,* 394 Pa. 419, 147 A.2d 148 (1959).