634 A.2d 270

**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**The FRATERNAL ORDER OF POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided Nov. 15, 1993.

Joseph S. Rengert, Chief Counsel, for petitioner.

Anthony C. Busillo, II, for respondent.

Before SMITH and PELLEGRINI, JJ., and KELTON, Senior Judge.

SMITH, Judge.

The Pennsylvania State Police (State Police) petitions for review of the February 20, 1991 award of the arbitrator that sustained Trooper Joseph P. DiRaimo's (Grievant) grievance filed upon his dismissal from employment with the State Police, and reduced the dismissal penalty imposed upon Grievant to a fifteen-day suspension without pay. The issue presented for review is whether the arbitrator's award exceeded the bounds of his authority. In considering this issue, this Court is called upon to articulate the appropriate scope of review of the arbitrator's award in a grievance arbitration filed by Act 111 [1] police personnel.

## I

On May 16, 1988, Grievant was returning from training in Meadville, Pennsylvania in a state police vehicle with his wife following in Grievant's personal vehicle. Grievant stopped at the South Midway Plaza on the Pennsylvania Turnpike where he put $10 worth of gasoline into the state vehicle and $5 worth of gasoline into his personal vehicle, and had the station attendant place the entire amount of the purchase on a Commonwealth credit card. Grievant thereafter made no attempt to ascertain how to repay the amount utilized for his personal vehicle. When Grievant's acts were subsequently discovered and referred to a local district attorney, Grievant was charged with a violation of Section 4106 of the Crimes

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

Code, *as amended,* 18 Pa.C.S. § 4106(a)(1)(iv), a summary offense.[2] Grievant pleaded guilty and paid a fine and costs.

On February 9, 1989, court martial proceedings against Grievant were held concerning the allegations of misuse of a Commonwealth credit card. Specifically, Grievant was charged with violation of Field Regulation (F.R.) 1–1.01 (conduct unbecoming a police officer) and F.R. 1–1.02 (failure to conform to and abide by the laws). Grievant pleaded guilty to these charges and on March 3, 1989, the State Police Commissioner, after finding among other things that Grievant had a prior arrest for retail theft which was disposed of through the accelerated rehabilitation disposition program, issued his disposition and order dismissing Grievant from employment with the State Police. Under provisions of the collective bargaining agreement (Agreement) negotiated between the State Police and the Fraternal Order of Police (FOP), Grievant was given the option of abiding by the prior court martial proceedings or grieving the penalty imposed by the Commissioner. Grievant elected the grievance procedure and a hearing was held before the arbitrator on December 14, 1990.

The sole question presented to the arbitrator was whether the State Police had just cause to terminate Grievant's employment for placing $5 worth of the Commonwealth's gasoline into his personal vehicle and failing to report his actions. The arbitrator noted there was no dispute that Grievant's actions were wrong, and that while Grievant contended that it was his continuing intent to repay the sum, his claim was nonetheless betrayed by the fact that he never contacted a superior in order to ascertain how to accomplish repayment. The arbitrator stated that Grievant's guilty plea to the charges against him "exposes the central issue in this dispute, the question of whether or not the Grievant is a thief." Arbitrator's Decision, p. 9. The arbitrator reasoned that Grievant's actions did not portray the actions of a thief because, "if [he] were a thief in

2. Section 4106(a)(1)(iv) provides that a person commits an offense if he or she uses a credit card for the purpose of obtaining property or services with knowledge that use of the card is unauthorized by the issuer.

the fullest context of the meaning, he would have filled his gas tank rather than just taking enough gasoline to get home." *Id.* The arbitrator concluded that Grievant was guilty of "committing a blatently [sic] stupid and unthinking act," *id.* at 10, sustained the grievance, reduced Grievant's discharge to a fifteen-day suspension without pay, and ordered that he be immediately reinstated and that he compensate the Commonwealth for the $5 worth of gasoline. The State Police appealed to this Court.

## II

In accordance with a recent decision by this Court, the proper scope of review of an arbitrator's award in cases of grievance arbitration involving Act 111 police personnel is the "essence test," specifically set forth in Section 7302(d) of the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320. *See Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Trooper James Betancourt),* 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). Section 7302(d)(1), (2) provides that where a person is required to submit a controversy to arbitration, a court in reviewing the award shall "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

Under the essence test, this Court is confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989). An arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties. *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988). However, the Pennsylvania Supreme Court has adopted the caveat expressed in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), that an arbitrator is confined to the interpretation and application of the collective bargaining

agreement and does not sit to dispense his or her own brand of industrial justice. *See Independent State Stores Union; Musser.* Subsumed within the essence test standard of review is the requirement that the arbitrator's interpretation of the agreement cannot be manifestly unreasonable. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 526 Pa. 301, 586 A.2d 355 (1991); *American Federation of State, County & Municipal Employees Local 2026 v. Borough of State College,* 133 Pa.Commonwealth Ct. 521, 578 A.2d 48 (1990).

# III

█ Based upon this Court's stated scope of review of the arbitrator's decision, the State Police argues that the arbitrator's award does not draw its essence from the collective bargaining agreement. Article XXVIII of the Agreement provides for grievance procedures and the selection of an arbitrator. Section 1 provides, in pertinent part:

> The arbitrator shall neither add to, subtract from nor modify the provisions of this Agreement or of the arbitration awards. The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted to him/her.

Section 4 of Article XXVIII provides in part:

> In the event that a member is accused of an offense that would otherwise be subject to court-martial proceedings ..., he shall, simultaneous with the receipt of the notice of the offense be advised in writing that he may elect to challenge that accusation either through a court-martial proceeding or through the grievance procedure.... [3]

The question submitted to the arbitrator for resolution was whether just cause existed for Grievant's discharge. "Just

---

3. On July 13, 1988, this Court in *Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police,* 117 Pa.Commonwealth Ct. 564, 546 A.2d 697 (1988), vacated this portion of the Agreement, known as the DiLauro Award, which had been the result of an interest arbitration award. On appeal, however, the Supreme Court reversed the decision of the Commonwealth Court and reinstated that portion of the arbitration award which allowed for an election of

cause" is not defined or discussed in the Agreement. Guidance can be found in field regulations which Grievant was charged with having violated and to which he pleaded guilty. F.R. 1–1.02 requires that an officer shall conform to and abide by the laws of the Commonwealth and the United States. F.R. 1–1.01 provides that an officer shall not conduct himself/herself in a manner which is unbecoming to a police officer. Unbecoming conduct is defined in the regulation as "that type of conduct which could reasonably be expected to destroy public respect for State Police officers and/or confidence in the Pennsylvania State Police." In discussing unbecoming conduct, the Pennsylvania Supreme Court has noted: "It is indispensable to good government that a certain amount of discipline be maintained in the public service.... It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt." *Zeber Appeal*, 398 Pa. 35, 43, 156 A.2d 821, 825 (1959).

Once it is established that the record reflects there was just cause for the action taken by the governmental agency, the inquiry must close and the action of the agency must be accepted. *Independent State Stores Union.* In other words, if just cause for the action was present, "any further effort on the part of the arbitrator to disturb the agency's action can not be said to flow from the essence of the bargaining agreement nor can it in any rational way be derived from that agreement." *Id.*, 520 Pa. at 274, 553 A.2d at 952. In *Independent State Stores Union*, the Supreme Court determined that once an arbitrator concurred in the Liquor Control Board's findings that a dismissed employee committed the charged act of misappropriation of funds, that finding established just cause for dismissal so that the Board's action should have been sustained. The arbitrator's modification of the dismissal penalty on the ground that the employee's conduct was caused by mental illness could not be rationally derived from the collective bargaining agreement.

grievance proceedings in lieu of court martial proceedings. *See Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police*, 525 Pa. 40, 575 A.2d 94 (1990).

In the matter sub judice, the arbitrator acknowledged there was no dispute that Grievant committed the acts charged, pleaded guilty to those charges, and that Grievant's actions were wrong. In fact, the arbitrator rejected Grievant's claim that he intended to repay the money. Nevertheless, the arbitrator strayed from the question presented to him—the question of just cause—and crafted a new issue, the question of "whether or not the Grievant is a thief." The arbitrator reasoned that Grievant was somehow less of a thief because he took less gas than he could have. The Agreement provides no authority for the arbitrator to modify the penalty imposed by the State Police. Indeed, the Agreement provides only that Grievant may challenge the *accusation* either through a court martial proceeding or through the grievance procedure. The arbitrator in this case clearly upheld the accusations made against Grievant but was without authority to modify the penalty imposed against Grievant.[4]

Several cases support the proposition that once the arbitrator found that Grievant committed the conduct charged, the question of appropriate discipline was a matter reserved to the employer. *See Independent State Stores Union* (once the arbitrator found that dismissed employee committed the charged acts of manipulation of records and misappropriation of funds, such finding established just cause for dismissal which could not be modified); *Musser* (arbitrator stepped beyond the bounds of his authority in modifying the employer's decision to dismiss prison employee who assaulted in-

---

4. The FOP relies upon *McKeesport Area School District v. McKeesport School Service Personnel Ass'n, PSSPA/PSEA*, 137 Pa.Commonwealth Ct. 28, 585 A.2d 544 (1990), for the proposition that the arbitrator, in the absence of a contractual definition of just cause, was free to interpret the disciplinary language as necessary to resolve the grievance. However, *McKeesport* is distinguishable from the matter sub judice because there the employer school district discharged a groundskeeper on the basis of three violations, but the arbitrator determined that only one of these violations provided just cause for discipline and appropriately modified the discharge to a suspension. Grievant's situation here is heightened in that he pleaded guilty to a criminal summary offense and admitted that he failed to conform to the criminal laws of the Commonwealth. *McKeesport* is therefore not controlling.

mate); *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983) (arbitrator who found that a housing authority security officer committed criminal fraud against a tenant was without authority to reduce penalty); *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers, AFL–CIO,* 147 Pa.Commonwealth Ct. 15, 610 A.2d 506 (1992) (arbitrator exceeded scope of his authority by modifying penalty from discharge to suspension despite finding that employee committed improper conduct as charged by the school district); *Manheim Central Education Ass'n v. Manheim Central School District,* 132 Pa.Commonwealth Ct. 94, 572 A.2d 31, *appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990) (arbitrator exceeded authority by finding immoral conduct by school employee but no just cause for dismissal and substituting a lesser penalty).[5]

■ It is manifestly unreasonable to conclude that a public employer could have intended to bargain away its absolute responsibility to ensure the integrity of its agency. *AFSCME Local 2026.* A governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function. *Independent State Stores Union.* Correspondingly, in light of the higher standard of conduct imposed upon police officers, *see Zeber* and *AFSCME Local 2026,* the power of the State Police to discharge any employee who is proven to have engaged in unbecoming conduct and misuse of a Commonwealth credit card is one presumptively retained by the State Police in the absence of any provision in the Agreement to the contrary.

5. FOP argues that the cases relied upon by the State Police, *Independent State Stores Union* and *Union of Security Officers,* are materially distinguishable from the present case because the arbitrators determined that the conduct for which discipline was being imposed rose to the level of criminality, whereas in the present case the arbitrator specifically rejected any charge that Grievant had acted in a criminal manner. FOP's distinction is unpersuasive in at least three respects: (1) unbecoming conduct need not be criminal in character, *see Zeber;* (2) Grievant pleaded guilty to a summary criminal offense; and (3) the arbitrators' decisions in both cases were unjustified by any terms that were or could properly have been contemplated by the parties to the collective bargaining agreements.

Accordingly, the award of the arbitrator is vacated and the order dismissing Grievant from employment issued by the Commissioner of the State Police is reinstated.

## ORDER

AND NOW, this 15th day of November, 1993, the award of the arbitrator is vacated and the order imposing the penalty of dismissal issued by the Commissioner of the Pennsylvania State Police is reinstated.

This case was originally submitted to a panel consisting of SMITH, J., PELLEGRINI, J., and BARBIERI, Senior Judge. Because of BARBIERI's, Senior Judge untimely death, the case was submitted to KELTON, Senior Judge as a member of the panel.

PELLEGRINI, Judge, dissenting.

I respectfully dissent to Section III of the majority opinion vacating the award of the arbitrator and reinstating the dismissal. Although I fully agree with the scope of review applied by the majority opinion, I would affirm the award of the arbitrator because it was rationally derived from the agreement between the parties. *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989).

Officer DiRaimo was charged with conduct unbecoming a police officer, Field Regulation (F.R.) 1–1.01, and failure to conform to and abide by the laws, F.R. 1–1.02, for his unauthorized use of a Commonwealth credit card. Officer DiRaimo admitted to using the credit card to purchase five dollars worth of gasoline for his personal vehicle on a trip home from out-of-town training when he was driving a state police vehicle, with his wife following him in their car.[1] The State Police discharged Officer DiRaimo based on the charges.

The Collective Bargaining Agreement (Agreement) between the State Police and the Fraternal Order of Police imposed by

---

1. Officer DiRaimo also pled guilty to a summary offense under the Crimes Code for use of a credit card with knowledge that the use is unauthorized.

an arbitration award provides the employee with an election of forums when accused of an offense that is subject to court-martial proceedings. Section 4 of Article XXVIII.[2] Officer DiRaimo elected to grieve the discharge contending that the penalty was not appropriate considering the circumstances of the unauthorized use. The issue submitted to the arbitrator was "whether or not just cause exists for the Grievant's [Officer DiRaimo's] discharge."

By allowing for the substitution of the grievance arbitration process for court-martial procedures, the Agreement in effect provides that the arbitrator should fill the same role as the Board and the Commissioner of the State Police in court-martial proceedings. The role of the Board and Commissioner are set forth in Section 711 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 251(b)(2), which provides that the Board shall first fully hear the charges and the complaints against the person and decide if the evidence substantiates the charges and then recommend to the Commissioner the penalty to be imposed. The Commissioner may disregard the recommendation of the Board as to penalty and may increase or reduce it. Because the arbitrator is fulfilling the role of the Board and the Commissioner in hearing charges subject to court-martial proceedings, unless otherwise limited by the issue presented or the contract, the arbitrator can conduct a full hearing,

2. Section 4 of Article XXVIII of the Agreement provides in part:
   In the event that a member is accused of an offense that would otherwise be subject to court-martial proceedings . . ., he shall, simultaneous with the receipt of the notice of the offense, be advised in writing that he may elect to challenge that accusation either through a court-martial proceeding or through the grievance procedure. . . .
   Because this provision of the arbitration award was vacated by this court at the time the charges were brought against Officer DiRaimo, court-martial proceedings were held without an opportunity to elect arbitration. The Commissioner of the State Police dismissed Officer DiRaimo based on the charges. Thereafter, the Supreme Court in *Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police (McCommons)*, 525 Pa. 40, 575 A.2d 94 (1990), reversed this court's decision and the State Police and the union agreed that anyone subject to court-martial proceedings could elect to grieve the Commissioner's decision.

determine if the evidence substantiates the charges and determine if the penalty is proper.[3]

In determining the issue of whether there was just cause for dismissal, the penalty imposed by the State Police, an arbitrator should examine the agreement for guidance on the appropriate penalty and ascertain whether the General Assembly by statute imposed a sanction. In this case, the Agreement did not contain any type of penalty section or listing of violations of Field Regulations that would result in dismissal. No statutory section relates to the penalties imposed on state police officers who violate the Field Regulations or, as in this case, are convicted of summary offenses. Where neither the Agreement nor any statutory provisions mandate the type of discipline to be imposed for a particular offense, the arbitrator may address whether dismissal was the proper penalty for the acts committed and, if not, state the appropriate penalty.

This case differs from those where there are provisions in the agreement or statutory provisions which mandate the type of penalty to be imposed or limit the arbitrator's powers to determine penalties. In *Independent State Stores Union*, where a liquor store manager was accused of misappropriating funds and failing to perform the duties of the store relating to accounting and counter practices, the agreement between the parties stated that the Commonwealth would not dismiss an

---

**3.** Section 1 of the Agreement directs the arbitrator to determine the issue presented to him by the parties:

The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted to him/her. The decision of the arbitrator shall be final and binding on both parties.... This case differs from *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993), where the issue presented to the arbitrator was "Did the State Police have just cause to discipline the grievant for his asserted violation of Field Regulation 1.01 Unbecoming Conduct; if not, what shall the remedy be?". In that case, we held that because the arbitrator should have found just cause for discipline for Unbecoming Conduct, the arbitrator was not permitted to consider the remedy. *See* fn. 16. In this case, the arbitrator was not limited by the issue presented to addressing the penalty only if he did not find just cause for discipline, but, in fact, was specifically directed to determine whether there was just cause for the *discharge*.

employee without just cause and listed the offenses of theft and a "serious violation of counter procedures" as just cause for immediate dismissal. The Supreme Court held that because the arbitrator found that the charged acts of impropriety were committed, that just cause for dismissal was established. *See also Manheim Central Education Association v. Manheim Central School District,* 132 Pa.Commonwealth Ct. 94, 572 A.2d 31 (1990), *petition for allowance of appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990) (Section 1122 of the Public School Code provided that immorality, which was the charge made against the teacher, was a valid cause for termination); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988) (the agreement between the parties specifically stated that the arbitrator could only decide the question of fact as to whether there was just cause for discipline and reserved to the County the right to determine the type of discipline imposed).

Because I believe the arbitrator had the power under the Agreement to reduce the penalty levied by the State Police against an officer, absent contrary contractual or statutory provisions which do not exist here, the substitution of a suspension instead of a dismissal was rationally derived from the Agreement between the parties and the arbitrator's award should be affirmed.