

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-1999

# Kute v. United States

Precedential or Non-Precedential:

Docket 99-3195

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Kute v. United States" (1999). *1999 Decisions.* Paper 259.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/259

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 22, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3195

WILLIAM T. KUTE and FRANCIS M. KUTE,

     Appellants

v.

UNITED STATES OF AMERICA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 98-00299)
District Judge: Honorable Sylvia H. Rambo

Submitted pursuant to Third Circuit Rule 34.1(a)
September 17, 1999

BEFORE: GREENBERG, SCIRICA, and RENDELL,
Circuit Judges

(Filed: September 22, 1999)

       Gary M. Lightman
       Eric C. Stoltenberg
       Lightman & Welby
       2705 North Front Street
       P.O. Box 911
       Harrisburg, PA 17108

        Attorneys for Appellants

David M. Barasch
United States Attorney
Loretta C. Argrett
Assistant Attorney General
Teresa E. McLaughlin
Annette M. Wietecha
Donald B. Tobin
Attorneys Tax Division
United States Department of Justice
Tax Division
P.O. Box 502
Washington, DC 20044

Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter is before this court on appeal from an order entered on January 15, 1999, on the parties' cross motions for summary judgment in the district court in this tax refund case. The district court entered the order in accordance with its accompanying memorandum opinion. The district court had jurisdiction under I.R.C.S 7422(a) and 28 U.S.C. S 1346(a)(1). We have jurisdiction under 28 U.S.C. S 1291. We exercise plenary review on this appeal, which involves only legal conclusions. See ACM Partnership v. Comissioner, 157 F.3d 231, 245 (3d Cir. 1998), cert. denied, 119 S.Ct. 1251 (1999).

The case arises out of the interplay between state and federal law and involves the application of the ten percent tax imposed by I.R.C. S 72(t) on a taxpayer on a nonperiodic distribution constituting an early withdrawal from a qualified I.R.C. S 401(a) retirement plan. The germane facts are not in dispute.1 In 1974, the Commonwealth of
_____

1. While William T. Kute and Francis M. Kute, his wife, are the taxpayers and all income tax returns and proceedings involved here have been

Pennsylvania enacted the State Employees' Retirement Code (Retirement Code), 71 Pa. Cons. Stat. Ann.SS 5101–5956 (West 1990), which continued the earlier established State Employees' Retirement System (Retirement System) and the State Employees' Retirement Fund (Fund). See id. SS 5102, 5932. A Board of Directors (Retirement Board) administers the Retirement System and the Fund. See id. SS 5901–5931. The Retirement Board has the authority to adopt and promulgate rules and regulations for the uniform administration of the system. See id. S 5902(h).

In April 1987, the Fraternal Order of Police (FOP), Kute's bargaining agent, initiated collective bargaining procedures with the Commonwealth to obtain a successor agreement to its contract effective for 1986 through 1988. Inasmuch as the negotiations reached an impasse, the FOP invoked the binding arbitration provisions of 43 Pa. Cons. Stat. Ann. S 217.4(a) (West 1992). On February 17, 1988, the arbitration panel awarded a change in pension benefits to Pennsylvania state troopers with at least 20 years of service who retire on or after July 1, 1989, eliminating any requirement that a trooper attain a specific age before retiring. The award further provided that in lieu of the standard single life annuity provided under 71 Pa. Cons. Stat. Ann. S 5702(a)(1), a trooper retiring after at least 20 years of service was entitled to receive an annuity of 50% of his highest yearly salary and that a trooper retiring after at least 25 years of service was entitled to receive an annuity of 75% of his highest yearly salary. The award also provided that if a court invalidated the pension benefit increase it would be replaced by a $1,000 pay increase with appropriate adjustments to reflect rank differential provisions. The parties refer to the award as the DiLauro Award in recognition of the chairperson of the arbitration panel.

The Commonwealth judicially challenged the DiLauro Award on the ground that 71 Pa. Cons. Stat. Ann.S 5955

_____

joint, as a matter of convenience we refer to William T. Kute as the sole taxpayer. We note that the complaint recites that Kute's wife's name is "Frances." Nevertheless, we refer to her as "Francis" in accordance with the caption used in the district court pleadings in this case.

barred collective bargaining over pension benefits. The Supreme Court of Pennsylvania, however, upheld the award. See Commonwealth of Pennsylvania v. State Conference of State Police Lodges of the Fraternal Order of Police, 575 A.2d 94, 97 (Pa. 1990) ("Fraternal Order of Police"). In particular, the court held that the Retirement Code "prohibits only collective bargaining agreements from determining pension rights" but "does not prohibit bargaining over pension benefits [nor] pension benefits from being affected by arbitration awards." Id. at 96-97. The court further concluded that the award was "a mandate to the legislature to enact whatever legislation [was] necessary to implement or fund the arbitration award." Id. at 97.

In response to Fraternal Order of Police, the Retirement Board voted to implement the DiLauro Award as follows:

> The awarded benefits of 50% of the highest year's salary after 20 years of service or 75% of the highest year's salary after 25 years of service shall be inserted into the Retirement Code structure in lieu of the standard single life annuity for purposes of calculating a withdrawal or superannuation annuity under Section 5702(a)(1).

The resolution further provided that "[a]ll other [Retirement] Code benefits remain in full force and effect and all optional benefit payment plans . . . remain in effect."

The legislature then amended section 5955, effective August 5, 1991, to provide in relevant part:

> Regardless of any other provision of law, pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement nor any arbitration award between the Commonwealth and its employees or their collective bargaining representatives shall be construed to change any of the provisions herein, to require the [Retirement Board] to administer pension or retirement benefits not set forth in this part, or otherwise require action by any other government body pertaining to pension or retirement benefits or rights of State employees. Notwithstanding the foregoing, any pension or retirement benefits or rights previously so established

4

by or as a result of an arbitration award shall remain in effect after the expiration of the current collective bargaining agreement between the State employees so affected and the Commonwealth.

71 Pa. Cons. Stat. Ann. S 5955 (West Supp. 1999) (emphasis added). In 1992, after nearly 30 years of service as a state trooper, Kute retired at the age of 51 years, and became eligible to receive retirement benefits.

Kute elected an alternative annuity option (Option 4) under 71 Pa. Cons. Stat. Ann. S 5705(a)(4)(iii), which was the actuarial equivalent of the maximum single life annuity provided by section 5702. Under Option 4, a portion of the retirement benefit (not in excess of the total accumulated deductions standing to the member's credit) may be paid as a lump sum, and the balance of the present value of the maximum single life annuity is paid as an annuity. Consequently, Kute received a monthly retirement benefit of $3,132.42 and a one-time payment of $49,607.13, as well as post-termination interest of $385.20. The $49,607.13 payment was composed of nontaxable member contributions of $13,593.94, taxable member contributions of $19,079.34, and interest on the contributions of $16,933.90. The ten percent tax on a portion of the payment of $49,607.13 is at issue here.

On his 1992 federal income tax return Kute reported and paid the ten percent additional tax in the amount of $3,700 under I.R.C. S 72(t), attributable to the distribution of $36,998 in taxable member contributions and interest. Kute then filed an administrative claim for refund of the additional tax. The IRS disallowed the claim, and Kute then brought this timely suit for refund.2

The parties thereafter submitted a stipulation of uncontested material facts and exhibits and served and filed cross-motions for summary judgment. The exhibits

_____

2. In its brief, the government points out that the sum of the taxable member contributions of $19,079.34 and interest of $16,933.90 was only $36,013.24. We also note that there seem to be some other de minimus numerical discrepancies in the numbers involved. No further mention of these problems appears in the briefs and thus we do not deal with them.

included a declaration of Dale Everhart, Assistant Executive Director of the Retirement System, setting forth that the IRS has treated the Retirement System as a qualified plan under I.R.C. S 401(a) since at least 1982 and that because the IRS has treated the Retirement System as a qualified plan, the Retirement System had not requested a determination letter from the IRS regarding its status as a qualified plan. Kute does not contest this point on this appeal.

Kute argued in the district court that I.R.C. S 72(t) did not apply to his lump sum one-time distribution. In this regard, he contended that the section applies only to distributions from "qualified plans" under I.R.C. S 401(a), so that in his view the tax was not applicable as his distribution came from the DiLauro Award rather than from the Retirement System. The government argued that the payment fell within I.R.C. S 72(t) as it was from a qualified plan and resulted from Kute's election of an alternative annuity option provided in the Retirement Code.

The district court granted the government's motion for summary judgment, holding that I.R.C. S 72(t) applied to the distribution. The court rejected Kute's assertion that the arbitration award created a benefit distinct from the Commonwealth's qualified pension plan. The district court held that the DiLauro Award was integrated into the Commonwealth's qualified pension plan. It pointed out that the Pennsylvania Supreme Court had determined that the arbitration board had the authority to issue an award affecting police retirement benefits and that the award was "a mandate to the legislature to enact whatever legislation [was] necessary to implement or fund the arbitration award." The district court further noted that the legislature had recognized the award when it amended section 5955 of the Retirement Code prospectively to prohibit arbitration awards from amending the Retirement Code by including language stating that "any pension or retirement benefits or rights previously so established by or as a result of an arbitration award shall remain in effect after the expiration of the current collective bargaining agreement between the State employees so affected and the Commonwealth." 71 Pa. Cons. Stat. Ann. S 5955.

6

The district court concluded that, in upholding the DiLauro Award, "the Pennsylvania Supreme Court determined that pension benefits under the Retirement Code could be modified by an arbitration award governing the contract between the Commonwealth and the state police." The court further observed that "[p]ursuant to the terms of the [Retirement] Board resolution, the increased pension benefits were `inserted' into the Retirement Code." The court also noted that Kute's lump sum payment was made pursuant to an option provided under the Retirement Code. See 71 Pa. Cons. Stat. Ann. S 5705(a)(4)(iii).

The court rejected Kute's argument that his retirement payments must be allocated between amounts received under the arbitration award and amounts received under the Retirement Code, as it concluded that Pennsylvania State Troopers Ass'n v. Pennsylvania State Employees' Retirement Board, 677 A.2d 1329, 1330 (Pa. Commw. Ct. 1996), alloc. denied, 689 A.2d 237 (Pa. 1997), prohibited such a result. The court determined that, under that decision, the arbitration award and formulas replaced the other benefits to state troopers under the Retirement Code and were not separate from benefits payable under the Code.3

II. DISCUSSION

On this appeal, Kute summarizes his argument as follows. While he recognizes that the Retirement System is treated as a qualified retirement plan under I.R.C. S 401(a), he contends that his lump sum pension benefit was not attributable to that system, but rather was derived from the DiLauro Award, which eliminated any age requirement for pension eligibility and provided that a trooper with 20 years of service was eligible for a pension benefit in an amount equal to 50% of his highest year's salary, and that a trooper, such as Kute, retiring with 25 years of service was eligible for an annuity equal to 75% of his highest year's

_____

3. The district court also rejected Kute's assertion that the payments at issue did not flow from a qualified plan because their source was the State Police benefit account established by 71 Pa. Cons. Stat. Ann. S 5936, rather than the Retirement Fund itself. Kute does not challenge this holding on this appeal.

7

salary. The award further provided that should the pension increase be judicially overturned, it would be replaced by an across-the-board pay increase of $1,000. This award[4] affected Kute's annual pension amount, the timing of when that amount is due, and the timing and amount of the return of his contributions. As such, the pension benefits were derived from the DiLauro Award rather than from the Retirement System. The Retirement Code makes no reference to the pension benefit under which he retired. While those benefits were inserted into the Retirement Code's structure for ease of administration, the award as opposed to the Retirement Code established them. Moreover, the legislature never amended the Retirement Code to add the benefits. Thus, the district court, in Kute's view, erred in determining that the lump sum amount was taxable under I.R.C. S 72(t).

As we have indicated, we are concerned here with a qualified pension plan under I.R.C. S 401(a). Under I.R.C. S 402(a)(1) (now I.R.C. S 402(a)), an amount distributed is taxable to the distributee in the year in which it is distributed under I.R.C. S 72. I.R.C. S 72(a) provides that in general gross income includes any amount received as an annuity, but I.R.C. S 72(b) excludes amounts attributable to the taxpayer's investment in the contract. While a plan can seek an advance determination from the IRS that it is qualified under I.R.C. S 401(a), it is not required to do so. See Cornell-Young Co. v. United States, 469 F.2d 1318, 1320 (5th Cir. 1972). In this case, as we have indicated, the Commonwealth has not sought a determination that the plan is qualified but no one has challenged that it has that status. While we need not set forth in detail the additional tax implications of a plan being qualified, we do point out that a qualified plan gives employees the benefit of deferring taxes until when they receive distributions from the plan.

There are, however, limitations on the tax advantages of an I.R.C. S 401(a) plan intended to discourage early withdrawals. In particular, as effective in 1992, and as

_____

4. In his brief Kute indicates that the "pension benefit" had these consequences, br. at 10, but we believe he is referring to the DiLauro Award.

8

germane here, I.R.C. S 72(t)(1) provided that the tax on any amount includable in gross income received from a qualified plan shall be increased by an amount equal to ten percent of that amount, except for distributions made on or after the date on which the employee attains age 59. There is, however, a restriction on the imposition of the additional tax, as the tax does not apply to part of a series of substantially equal periodic payments (not less frequently than annually) made for the life or life expectancy of the employee. See I.R.C. S 72(t)(2)(A)(iv). Kute, of course, began receiving the monthly payment long before he reached 59 years of age, but by reason of I.R.C. 72(t)(2)(A)(iv), his monthly payments have not been subject to the additional tax.

The lump sum payment, however, is another matter. As we have stated, Kute concedes that the plan is qualified. Moreover, he does not contend that an exception to the requirement for the additional tax is applicable. Instead, he contends that the distribution, rather than being from a qualified plan, was attributable to the DiLauro award so that I.R.C. S 72(t) was simply not applicable to it.

The district court rejected that argument and so do we as it does not conform to the realities of the situation. See, e.g., Geftman v. Commissioner, 154 F.3d 61, 68 (3d Cir. 1998). In Fraternal Order of Police the Supreme Court of Pennsylvania held that the pension benefits due to state troopers could be modified by an arbitration award. See 575 A.2d at 96-97. Then the Retirement Board, pursuant to its authority to adopt rules and regulations, 71 Pa. Cons. Stat. Ann. S 5902(h), passed a resolution on September 26, 1990, to implement the award. The resolution provided that the increased benefits would be "inserted into the Retirement Code structure," and that "[a]ll other Code benefits remain in full force and effect and [that] all optional benefit payment plans . . . remain in effect." Moreover, the Retirement Board's resolution expressly inserted the DiLauro Award "into the Retirement Code structure."

There can be no doubt that the Retirement Board had the authority to implement the changes it did without further legislative action as the Commonwealth Court in

9

Pennsylvania State Troopers Ass'n upheld the Retirement Board's action. See 677 A.2d at 1332. Furthermore, the legislature, which apparently was dissatisfied with the DiLauro Award, amended 71 Pa. Cons. Stat. Ann. S 5955 to provide, but only prospectively, that the Retirement Code alone would be the source of state employees' pension rights. But at the same time it effectively ratified the DiLauro Award because amended section 5955 provides that "[n]otwithstanding the foregoing, any pension or retirement benefits or rights previously so established by or as a result of an arbitration award shall remain in effect after the expiration of the current collective bargaining agreement between the State employees so affected and the Commonwealth."

Kute himself demonstrated by his actions that he received the lump sum payment from a qualified plan as he elected to obtain the benefit pursuant to Option 4 of the Retirement Code, which provides that an employee may receive a portion of his benefit in that form. Nothing in the DiLauro Award even mentions such an option, as the award dealt only with periodic payments. Overall, we are satisfied that the district court clearly reached the correct result.

III. CONCLUSION

For the foregoing reasons the order for summary judgment entered January 15, 1999, will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

10