572 A.2d 31

MANHEIM CENTRAL EDUCATION
ASSOCIATION, Appellant,

v.

MANHEIM CENTRAL SCHOOL DISTRICT, Appellee.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1989.

Decided Feb. 15, 1990.

Reargument Denied April 23, 1990.

Petition for Allowance of Appeal Denied Sept. 19, 1990.

Mary Catherine Frye, Harrisburg, for appellant.

Susan R. Friedman, Tryon, Friedman & Espenshade, Lancaster, for appellee.

Before DOYLE and BARRY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

This is an appeal by the Manheim Central Education Association (Association) from an order of the Court of Common Pleas of Lancaster County which vacated an arbitration award.

The facts in this case are not in dispute. Grievant had been employed by the Manheim Central School District (District) as a teacher and athletic coach (track) from 1967 until January of 1988. On November 4, 1987 the District Superintendent sent Grievant a letter indicating he would recommend that Grievant be dismissed from his position on grounds of immorality. The underlying facts giving rise to this personnel action may be summarized as follows. During the period from February through August of 1987 Grievant wrote various love letters to two of the District's female students. He also spoke to one of them professing his love. At no time did Grievant have any physical contact with either student; however, his attentions resulted in, *inter alia*, the students being teased by their peers and one of them intentionally falling during a track meet to avoid qualifying for state championships which would have required her to be alone with Grievant.

The arbitrator also found, however, in addition to the foregoing facts, that the period from 1985 to 1987 had been fraught with economic and emotional stress for Grievant during which time his father died, he became estranged from his brother due to his mother's debilitating illness, his wife had an affair and asked for a divorce, he placed his mother in a nursing home, he moved out of the house at his wife's insistence, his son went off to college, and his mother died of cancer.

The arbitrator opined, "It is quite clear that the Grievant's conduct in this case fit within the wide scope of 'immorality' in Pennsylvania's teacher tenure statute."[1]

---

1. Section 1122 of the Public School Code of 1949, (School Code) Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1122, pertinently states, "The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth." Immorality has been judicially defined to mean a course of conduct which offends the morals of the community and constitutes a bad example to the youth whose ideals a teacher is expected to foster and elevate. *Lesley v. Oxford Area School District,* 54 Pa.Commonwealth Ct. 120, 420 A.2d 764 (1980).

Nonetheless, the arbitrator, relying upon the mitigating factors of Grievant's personal problems, his exemplary record with the District prior to 1987, and the esteem in which he was held by his students and colleagues generally, determined that the *penalty* of immediate termination was too severe. Accordingly, he entered the following award:

that the period between the board's decision on 1/5/88 until the start of the coming school year [September of 1988] shall serve as a disciplinary suspension without pay;

that starting on the first teacher work day of the 1988–89 school year the grievant shall be entitled to the use of his cumulative sick leave, pending regular receipt of confirmation that he is undergoing psychiatric treatment at least weekly;

that upon exhaustion of his sick leave, he shall be examined by a psychiatrist selected by the school board and, depending on his/her assessment, the board shall offer the grievant either a resignation or a medical sabbatical;

if he is not offered or does not accept a resignation, [then] his termination shall be effective upon the expiration of the medical sabbatical.

(Footnotes omitted.)

Upon the District's appeal the trial court vacated the award reasoning that once the arbitrator determined that the charged conduct had occurred and was immoral he was without authority to alter the penalty. This appeal by the Association followed.

■ We note at the outset that a court's review of an arbitrator's award entered pursuant to the Public Employe Relations Act[2] (Act 195 or PERA) is limited. The proper judicial inquiry is whether the award draws its essence from the collective bargaining agreement. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (*ISSU*). We are thus

2. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

confined to determining "whether the arbitrator's decision could rationally be derived from the collective bargaining agreement." *Id.*, 520 Pa. at 272, 553 A.2d at 951. This, of course, means that we must begin by examining the relevant provisions of the collective bargaining agreement.

Article 9 of the agreement provides:

JUST CAUSE

No professional employee shall be disciplined, reprimanded in writing, reduced in rank or compensation without just cause.

The term "just cause" is not defined anywhere in the agreement, nor is a teacher's dismissal or discharge, if not included within the term "discipline," elsewhere dealt with. Further, the agreement does not specifically address whether an arbitrator can modify a penalty, nor does it incorporate by reference the Public School Code of 1949 (School Code).[3] While the mechanics of the grievance procedure are established in the agreement they do not further define the arbitrator's powers and, thus, are not illuminating as to the issues here. Finally, nothing in the collective bargaining agreement substantively addresses the use of either sick leave or medical sabbaticals.

As we observed, Article 9 does not specifically refer to "dismissal" but only to "discipline", and in light of the Supreme Court's holding in *Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983) (holding, *inter alia*, that the term "discipline" as used in a collective bargaining agreement did not include "dismissal") an argument could certainly be made that the conduct here is not covered under Article 9 at all. However, the parties have not raised this issue and we are not here to raise it for them. In any event, the issue is waived because of the parties' stipulation as to what issues were presented to the arbitrator.

**3.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101 through 27–2702.

The issues stipulated to as framed by the arbitrator [4] were:

1.  Whether the grievant was discharged for just cause? If not, what shall the remedy be?

2.  Whether the grievant was improperly denied accumulated sick leave and a medical sabbatical? If so, what shall the remedy be?

As previously noted, the arbitrator did not specifically say whether he found just cause *for dismissal.* Instead, he indicated that he found that immorality, as defined in the School Code, had been proved and that there was no just cause for the penalty imposed. Our initial task is to determine whether a finding of immorality under Section 1122 of the School Code is the equivalent of a finding of just cause for dismissal under the collective bargaining agreement.

**4.** We find, contrary to the District's contention at oral argument, that it *did* stipulate to both issues as the following colloquy reveals:

DR. ZIRKEL [Arbitrator]: How about a joint statement of the issue?

MS. FRYE [Association's Counsel]: Whether [Grievant] was discharged for just cause, and if not, what shall the remedy be, and whether Grievant was improperly denied use of accumulated sick leave and medical sabbatical, and if so, what shall the remedy be.

MS. FRIEDMAN [District's Counsel]: It's agreed that the question of denial of the sick leave and sabbatical was subsequent to the discharge? That there is no issue of denial of that prior to the discharge.

DR. ZIRKEL: So do you have two issues? Do I understand that correctly, that you both agree to—

MS. FRIEDMAN: I believe that the issue, from our viewpoint the issue is whether Grievant was discharged for just cause and then if not, what should the remedy be, and they're arguing that—

MS. FRYE: Well, you don't reach the second issue unless until you pass the first issue, that's true.

DR. ZIRKEL: But there is a second issue you're saying.

MS. FRYE: That's in the grievance, yes, that's correct.

MS. FRIEDMAN: Can you repeat it to me, please.

MS. FRYE: Whether Grievant was improperly denied use of accumulated sick leave and medical sabbatical, and if so, what shall the remedy be.

DR. ZIRKEL: Do I take it from the district's point of view the position is that he was discharged for just cause because you agree apparently that if I should decide contrary to your conclusion that there is a second issue which has just been stated?

MS. FRIEDMAN: *That is correct.*

N.T. 4–5 (emphasis added).

The Association contends in its reply brief that acts constituting immorality under the School Code do not necessarily constitute just cause for dismissal. It relies on Section 1133 of the School Code,[5] 24 P.S. § 11–1133, to bolster its position. That Section provides in pertinent part:

Nothing contained in Sections 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement ... negotiated by a school entity and an exclusive representative of the employes in accordance with the ... "Public Employe Relations Act," which agreement provides for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's termination for just cause or for the causes set forth in Section 1122 of this act....

The Association maintains that if arbitrators can only consider whether the School Code has been violated they will be obligated to uphold discharges and will have no discretion in reducing penalties. This statement is inaccurate for two reasons. First, an arbitrator, in finding the facts, need not specifically conclude that a School Code violation has occurred (but could merely decide that other just cause exists) and further, may even determine that the charges forming the basis for the discharge did not occur. In the latter circumstance, as in the former, a violation of the School Code would not even be found. Second, the Association in suggesting that an arbitrator cannot consider clear School Code violations when determining just cause, seeks to read Section 1122 of the School Code out of existence. The Supreme Court, in *ISSU*, has made it clear that "a governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function." *ISSU*, 520 Pa. at 277–278, 553 A.2d at 954. Thus, a school district could not, even if it wanted to, enter into a contract which would permit the reinstatement of a teacher despite a finding that the teacher had committed acts giving rise to the causes set

5. Section 1133 was added to the School Code by Section 4 of the Act of June 29, 1984, P.L. 438.

forth for termination under Section 1122 of the School Code. And, we refuse to read Section 1133 to suggest that the legislature would have sanctioned such an absurd result. Accordingly, we conclude that just cause under a collective bargaining agreement and immorality under the School Code are not necessarily mutually exclusive terms and that a finding of immorality can, as a matter of law, constitute just cause which in this instance it does. Finally, we take particular note of the precise language of Section 1133 added to the Code in June of 1984, *after* the Supreme Court's holding in *Neshaminy*. The language states that arbitration may be the agreed upon form of issue dispute over "termination for just cause *or* for the causes set forth in Section 1122 of this act" (emphasis added). The only way Sections 1122 and 1133 can be read in *pari materia* and effect given to both, is to view Section 1133 as expanding the reasons for dismissal or "termination" if the parties have reached that understanding by mutual consent in a collective bargaining agreement.

We must next consider whether the arbitrator having found just cause (via his finding of immorality) had authority to modify the District's penalty. The Association argues that because the first issue submitted for arbitration included the sub issue of "what shall the remedy be," and because the second issue concerns sick leave and medical sabbatical, the arbitrator did not act outside the bounds of his authority despite the absence of any specific language in the collective bargaining agreement authorizing penalty modification. While at first blush this argument is appealing, it is not without its difficulties. Specifically, we believe that our Supreme Court's decision in *ISSU* compels a contrary result.

In *ISSU* the grievant was dismissed from his position as a general manager with the Pennsylvania Liquor Control Board because he had falsified store records and was found to be responsible for the disappearance of money or other property from one of the Pennsylvania Liquor Control Board stores. He grieved his discharge. The underlying

facts and charges themselves, as here, were not in dispute. And, as here, the grievant asserted that he was suffering from a mental or psychological disability which fact should have served to justify the arbitrator's reducing the penalty.

In *ISSU*, although the arbitrator found that the alleged conduct had occurred, he held that there was no just cause *for the discharge* (not simply the penalty). In our case, the arbitrator determined that while the charged conduct had occurred, there was no just cause for the *penalty* imposed. In neither case was the charged conduct really disputed. Rather in each situation the employee sought to mitigate the penalty by claiming mental illness. Further, in *ISSU*, as here, the issue presented for arbitration was: "was the grievant discharged for just cause, and if not, what shall the remedy be?" Despite this framing of the issue in *ISSU* and despite the arbitrator's having found a lack of just cause for the discharge, the Supreme Court held that the arbitrator's actions were improper. The Court wrote:

> The arbitrator concurred in the [Liquor Control Board] findings that [the grievant] committed the charged acts of impropriety. That finding established the "just cause" for the dismissal. At that point, the inquiry should have ended and the [Liquor Control Board] action sustained. The further actions by the arbitrator in this manner cannot rationally be derived from the collective bargaining agreement.

*ISSU*, 520 Pa. at 278, 553 A.2d at 954. We believe that *ISSU* is controlling here and a similar result is required.

It is clear from reading *ISSU* that the Court was concerned with permitting an arbitrator to conclude that an agency could bargain away the responsibilities essential to its function. In *ISSU* that function included, *inter alia*, the responsibility to ensure the financial integrity of its operations; in our case the District's function includes, *inter alia*, insuring the morality of those employed to teach our young citizens. Further, the Supreme Court indicated in *ISSU* that if an agency entered into a collective bargaining agreement whereby it attempted to bargain away such a

function "its validity would at best be questionable." *Id.*, 520 Pa. at 276, 553 A.2d at 953.

The Association argues, citing various cases, that penalty substitutions have been upheld in the past. In *Wilkes–Barre Area Educational Association v. Wilkes–Barre Area School District*, 113 Pa.Commonwealth Ct. 492, 538 A.2d 81 (1988), this Court held that an arbitrator's determination that teachers could not be docked several hours pay for failure to attend parent-teacher conferences drew its essence from the collective bargaining agreement. But, *Wilkes–Barre* was not a penalty substitution case. The arbitrator simply ruled that the past practices of the school district prohibited the district from docking a teacher's pay at all. In *United Transportation Union, Local 1594 v. Southeastern Pennsylvania Transportation Authority*, 28 Pa.Commonwealth Ct. 323, 368 A.2d 834 (1977), a bus driver was dismissed on a charge of substandard work. We held that the arbitrators could reinstate him but deny backpay. This case also did not involve a penalty substitution,[6] but even if denial of backpay were considered such a substitution the case was not one where the conduct of the employee-grievant, when found to exist as a fact by the arbitrator, ran counter to a significant public policy specifically defined by the legislature, and, hence, would not be controlling. *City of Philadelphia v. Fraternal Order of Police*, 125 Pa.Commonwealth Ct. 625, 558 A.2d 163 (1989), concerned an award under the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1 through 217.27 (Act 111). That Act requires this Court to employ a different scope of review and it is not unusual for a result to be upheld in an Act 111 case that would not be permitted under Act 195. *See generally City of Philadelphia v. Fraternal Order of Police*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989). The Association also cites *North East Education Associa-*

---

**6.** We have held that denial of backpay is not the equivalent of a suspension. *Corley v. Department of Public Welfare*, 93 Pa.Commonwealth Ct. 639, 502 A.2d 768 (1985); *see also City of Philadelphia v. Fraternal Order of Police*, 129 Pa.Commonwealth Ct. 392, n. 8, 565 A.2d 1232, n. 8 (1989).

*tion v. North East School District* 117 Pa.Commonwealth Ct. 19, 542 A.2d 1053 (1988), wherein we permitted an arbitrator to reduce a suspension from three days to one day. We note, however, that while there was a reduction in the suspension in that case, there was not a substitution of one type of personnel action for another; that is, in *North East* the award simply reduced a three day suspension to a lesser *suspension* (one day) and did not substitute a suspension for a *discharge*. We further note that our Supreme Court decided *ISSU* subsequent to *North East* and to the extent that the two cases appear inconsistent, *ISSU* must, of course, prevail.

Finally, we cannot help but note that the way in which the parties framed the issue "whether [Grievant] was discharged for just cause, and *if not*, what shall the remedy be." That indicates that a penalty was to be considered by the arbitrator only if just cause was *not* found. We, of course have held, despite the arbitrator's awkward drafting of his adjudication, that just cause was found. We note that the issues before the arbitrator were framed by the parties' counsel and further note the failure of the collective bargaining agreement to address these issues more definitively.

Having determined that the arbitrator was without authority to alter the District's penalty in this case, we affirm the trial court's order vacating the award.

## ORDER

NOW, February 15, 1990, the order of the Court of Common Pleas of Lancaster County in the above-captioned matter is hereby affirmed.

BARRY, Judge, dissenting.

The majority essentially relies upon *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (*ISSU*) in holding that the arbitrator in the present case lacked authority to alter the

penalty imposed by the Manheim Central School District (District) against the grievant. As I am certain that *ISSU* is distinguishable on a number of independent grounds, I believe that the arbitrator had such authority. Accordingly, I believe that the trial court erred in vacating the arbitrator's award and that the majority has erred in affirming the trial court. Hence I respectfully dissent.

The majority correctly notes that a court's scope of review over arbitration awards is limited to deciding whether the arbitrator's decision can be viewed as having been rationally derived from the collective bargaining agreement. After properly stating the well known "essence test", the majority nevertheless permits the trial court to intrude into the exclusive domain of the arbitrator.

In *ISSU*, the Supreme Court was called upon to review the dismissal of an employee of the Pennsylvania Liquor Control Board (PLCB) who had falsified business records and stolen money from the PLCB store where he had worked. The employee was suspended pending a further investigation into the matter. While that investigation was proceeding, the employee entered a hospital and was treated for mental illness. When the PLCB asked for substantiation of said treatment, the employee failed to provide any such information. The PLCB dismissed the employee.

The employee then filed a grievance, alleging that his misconduct was caused by his mental illness. At a hearing before an arbitrator, the employee's union gave evidence that the employee had been hospitalized and further presented expert medical opinions that he had been suffering from a stress-related mental disorder. The arbitrator decided that because of the employee's mental condition, the PLCB lacked just cause to terminate the employee and reinstated the employee under conditions not relevant here. On appeal, we affirmed. *Pennsylvania Liquor Control Board v. Independent State Store Union*, 100 Pa.Commonwealth Ct. 272, 514 A.2d 959 (1986). The PLCB filed a petition for allowance of appeal which the Supreme Court granted. After hearing argument on the matter, the Su-

preme Court reversed and reinstated the discharge of the employee.

The majority opinion was authored by Chief Justice Nix and represented the view of Justices Flaherty, McDermott, Papadakos and Stout. That opinion referred to *Philadelphia Housing Authority v. Union of Security Officers*, 500 Pa. 213, 455 A.2d 625 (1983) and *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988), stating that both of these cases limited the arbitrator from dispensing his own brand of industrial justice. As the *ISSU* majority stated, "[I]t should be recognized that a governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function." *ISSU*, 520 Pa.Commonwealth Ct. at 278, 553 A.2d at 954. Justice Papadakos, while joining the majority opinion, authored a concurring opinion. He recognized that the concept of just cause had to encompass elements of justification or excuse. As Justice Papadakos stated, "In this case, [the employee] was given the opportunity to explain away his dereliction and failed to do so." *Id.*[1] In the present case, the grievant presented evidence of his mental problems in a timely fashion. Furthermore, there is no question that the mental problems were a causative factor in the conduct which led to his discharge. For that reason alone, I believe *ISSU* is distinguishable.

It must be pointed out that both *Philadelphia Housing Authority* and *Centre County* are distinguishable for additional reasons. Both of those cases involved criminal conduct on the part of the discharged employee. In the present case, the grievant is charged with "immorality". It cannot be seriously contended that all immoral conduct is criminal and in the present case, no one contends that the

---

1. When referring to the employee's failure to explain away his dereliction, we believe Justice Papadakos was discussing the failure to provide substantiation of the illness prior to his termination. It is also possible that the evidence offered at the arbitration hearing, while opining that the employee was mentally ill, did not opine that the mental illness was the cause of the employee's dishonest and criminal conduct. For purposes of this analysis, either meaning supports my belief that the present case is distinguishable from *ISSU.*

grievant committed any crime. Furthermore, *Centre County* is further distinguishable from the present case because the collective bargaining agreement in effect in that case had an explicit provision which stated, "Should a grievance over discharge ... go to arbitration for determination, the sole question to be decided by such arbitrator shall be the question of fact as to whether or not such employee was discharged for just cause." *Id.* 519 Pa. at 384, 548 A.2d at 1196. No such provision is contained in the collective bargaining agreement signed by the District and the union in the present case.

As did the discharged employees in *Philadelphia Housing Authority* and *Centre County,* the employee in *ISSU* engaged in criminal conduct. The grievant's conduct here was not criminal. I believe that is a crucial factor, especially where the criminal conduct reflects upon the employee's ability to do his job. As the grievant here committed no crime, the present case is distinguishable from all of the previously mentioned cases.

I believe that an even more important reason exists for distinguishing the present case from *ISSU.* As quoted before in this opinion, the majority opinion in *ISSU* relied upon a governmental employer's inability to relinquish powers essential to the discharge of its function. As the majority opinion there stated, "We find nothing in the labor agreement here involved or any circumstance to suggest that the LCB had 'bargained away' its power to discharge a proven thief; and it would be 'manifestly unreasonable' to conclude that the agency intended to do so." *Id.* 520 Pa. at 277–78, 553 A.2d at 953–54.

One cannot seriously question a school district's ability to relinquish some of its powers relating to the discharge and discipline of its professional employees. The Legislature has explicitly sanctioned such relinquishment. In response to the Supreme Court's decision in *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462

A.2d 629 (1983)[2], the Legislature enacted what is now Section 1133 of the School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended, added by* the Act of June 29, 1984, P.L. 438, 24 P.S. § 11–1133 (Supp.1989–90). That section provides:

> Nothing contained in section 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement in effect on July 23, 1970, or any date subsequent thereto, negotiated by a school entity and an exclusive representative of the employees in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act", which agreement provides for the right of the exclusive representative *to grieve and arbitrate the validity of a professional employe's termination for just cause or for causes set forth in Section 1122 of this act....* (emphasis added).

To argue that the arbitrator lacked the authority to decide whether the School District had just cause to terminate the grievant without allowing him to collect accumulated back benefits based on *ISSU* is to ignore Section 1133 of the School Code. That section could not be more explicit and the only reasonable interpretation of it leads to the conclusion that the arbitrator's award here drew its essence from the collective bargaining agreement.

A few more points must be made. The arbitrator here was asked to determine if the School District had just cause for the grievant's dismissal. "Just cause" does not exist in a vacuum. Whenever one looks at any disciplinary action and the concept of just cause, one must ask, "Was there just cause *for the disciplinary action taken?*" Here, the School District decided to terminate the grievant without permitting him to collect benefits accumulated over twenty years of satisfactory service. Furthermore, the award of

---

**2.** "It appears to us that the legislature's action in adopting Section 1133 of the Code was a direct response to the decision of our Supreme Court in *Neshaminy, ....*" *Wilson Area Education Association v. Wilson Area School District,* 90 Pa.Commonwealth Ct. 151, 156, 494 A.2d 506, 509 (1985).

the arbitrator did not put the grievant back into the class-room because the award required that the grievant either resign or be fired at the end of the medical sabbatical. As grievant's counsel stated in the brief to this Court:

> In the case at bar, Arbitrator Zirkel fashioned a remedy which allowed the grievant use of the benefits he had earned during twenty years of satisfactory service. He did not, however, reinstate grievant to the classroom. The grievant's conduct, while not criminal, may have violated public policy, but the *arbitrator's award did not.* The arbitrator's award furthered the public policy of the Commonwealth, in that it balanced the valid and important interests of the District in protecting its students from the actions of an emotionally ill teacher against the valid and important interest of the teacher in utilizing his earned benefits to recover his mental health. To ensure that the benefits were used for the purpose of recovery of health, the arbitrator went so far as to require the teacher to confirm weekly psychiatric treatment. The District can point to no established public policy violated by the arbitrators fair and evenhanded remedy; indeed, it is the District's determination to deprive [grievant] of the use of earned benefits to recover his mental health that violates the express public policy of the Commonwealth. The Legislature provided for the accumulation of sick leave, and for the vested right to sabbatical leave for the restoration of health, through the Public School Code.... Nowhere did the Legislature limit use of those earned benefits to teachers suffering from physical illnesses. The public policy of the Commonwealth, as expressed by legislative enactment, is to provide teachers with financial security in times of illness, to enable them to recover their health.

(Brief for Appellant, pp. 30–31) (emphasis in original).

To recap, I believe that *ISSU,* relied upon by the majority in holding that the arbitrator lacked the power to modify the penalty imposed, is inapposite. Similarly, both *Philadelphia Housing Authority* and *Centre County* are also

distinguishable. I would reverse the order of the trial court and reinstate the arbitration award.