639 A.2d 974

**RIVERVIEW SCHOOL DISTRICT, Appellant,**

**v.**

**RIVERVIEW EDUCATION ASSOCIATION, PSEA–NEA.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1993.

Decided March 25, 1994.

Martin W. Sheerer, for appellant.

Ronald N. Watzman, for appellee.

Before COLINS and SMITH, JJ., and DELLA PORTA, Senior Judge.

SMITH, Judge.

The Riverview School District (School District) appeals from the March 4, 1993 order of the Court of Common Pleas of Allegheny County which dismissed the School District's petition for review and petition to vacate, modify and/or correct an arbitrator's award sustaining grievances filed by the Riverview Education Association (Association) on behalf of Brian Miller and Paulette Luczak. At issue is whether the arbitrator's decision may rationally be derived from the collective bargaining agreement (Agreement) between the School District and the Association.

I

Luczak and Miller were grammar school teachers employed by the School District. In the autumn of 1990, Luczak, Miller, and Miller's wife began planning a ski-club trip to Colorado that was scheduled for a week in February 1991 in which Monday would be a legal holiday but school would be in session the remaining four days. In November 1990, Luczak and Miller each submitted to the superintendent of schools requests for personal leave for February 19 through 22, 1991. Pursuant to provisions of the Agreement,[1] the superintendent

1. Article IX of the Agreement provides that personal leave "shall be granted to handle affairs which must be conducted at times when school is in session and is subject to preapproval by the Superintendent." The Agreement further states that the purpose for such leave "need not be stated in the application except when the day for which leave is requested falls either immediately prior to or subsequent to a school holiday or a holiday weekend." In addition, when more than

requested further clarification as to the purpose for the leave requests and held separate conferences with Luczak and Miller in order to discuss the reasons for their requests.[2] In December 1990, the superintendent denied the requests, stating that the reasons for the requests failed to represent matters which must be conducted at times when school is in session.

On December 20, 1990, the Association filed a grievance on behalf of Luczak and Miller requesting approval for the personal leave days and reimbursement for any losses incurred. After hearing, the superintendent again denied the requests. The Association continued the grievance before the school board, which on January 21, 1991 affirmed the superintendent's decision. On February 1, 1991, the Association informed the School District that it accepted the decision and would not further pursue the matter. Meanwhile, Luczak and Miller made payments on the ski trip throughout December and January and continued to make plans for the trip, despite the denial of their requests. In January, an Association representative inquired of the superintendent if Luczak and Miller could take unpaid leave to go on the ski trip. The superintendent responded that he would present the matter to the school board if Luczak and Miller requested it; however, Luczak and Miller made no such request.

On Tuesday, February 19, 1991, Luczak left a message on the School District's telephone answering machine that she was "going to need to be off Tuesday, Wednesday, Thursday and Friday, at least" and further stating, "I'll call if I need to be off longer." That same day, Miller left a message on the answering machine stating, "I am going to need to be off for a few days" and "I will call you when I can be back." Luczak

two personal leave days are requested, the purpose of the personal day must be stated and approved by the superintendent.

**2.** Luczak informed the superintendent that the purpose for her request was, inter alia, to go on a ski trip to the Rocky Mountains, take pictures to share with her class, and inquire into a real estate investment. Miller informed the superintendent that his purpose was to visit with the family of his former minister and have time away from his extended family in order to ease stress.

and Miller did not report for duty for the remainder of the week. On Monday, February 25, 1991, Miller reported to work. In a meeting with the superintendent that day, Miller stated that he had been to Colorado and presented the superintendent with a School District absence certificate stating that his absence was due to "personal illness," as well as a letter from a clinical psychologist, Roger J. Morris, dated February 9, 1991 stating that he evaluated Miller on January 19, 1991 and that "stressful life events" supported Miller "being granted time off in order to prevent further psychological disability." The superintendent suspended Miller from his duties pending a school board hearing.

Also on February 25, Luczak left a message that she would not be in on Monday or Tuesday of that week. The following day, Luczak left a message that she had "just come from an appointment and will not be in the rest of the week." Luczak returned to work on Monday, March 4, 1991 and when asked by the superintendent about her absence, she responded that she could not answer because it was related to her treatment. Luczak presented the superintendent with an absence certificate stating that her absence was due to "personal illness," and she included a letter from Morris dated February 15, 1991 stating that Luczak was "presently in treatment" and "recent family events in her life has [sic] led her to experience an inordinate and unacceptable degree of psychological stress." Morris' letter recommended "a temporary leave of absence from work." The superintendent suspended Luczak pending a school board hearing. Luczak and Miller were given notices of charges and scheduled hearings before the board. The parties subsequently agreed that the matters would be considered as completed dismissals from employment and opted for the grievance procedure.

The issue before the arbitrator was whether there was just cause for the dismissals. After hearing, the arbitrator issued an opinion in which he stated, inter alia, that the mere fact that Luczak and Miller requested and were denied personal emergency leave is of "no relevant significance"; the issue is whether their absences were justified as sick leave; and the

School District discharged Luczak and Miller solely because they took the same ski trip under "sick leave" for which they had earlier been denied personal emergency leave. The arbitrator sustained the grievances with directions that the School District reinstate the grievants to their former employment status. On appeal, the trial court stated in its opinion that if it "were in the position of the arbitrator, grievants' claims would have been given the short shrift they deserve. It takes no special perspicacity to ferret out grievants' end-run around the personal leave denial via the sick-leave route." However, the trial court held that because of its limited scope of review it was without power to overturn the arbitrator's award and it dismissed the School District's petition.

## II

The School District argues on appeal that the arbitrator was without authority to overturn its dismissal of Luczak and Miller because their misconduct constituted just cause for discipline. This Court notes at the outset that review of an arbitrator's award entered pursuant to the Public Employe Relations Act [3] is limited. The proper judicial inquiry is whether the award draws its essence from the collective bargaining agreement. *Manheim Central Education Ass'n v. Manheim Central School Dist.*, 132 Pa.Commonwealth Ct. 94, 572 A.2d 31, *appeal denied*, 525 Pa. 661, 582 A.2d 326 (1990). Under the essence test, this Court is confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement. *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989). An arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties. *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988). Where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of an award.

**3.** Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

*City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989).

■ The Pennsylvania Supreme Court has adopted the caveat expressed in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), that an arbitrator is confined to the interpretation and application of the collective bargaining agreement and does not sit to dispense his or her own brand of industrial justice. *See Independent State Stores Union; Musser.* Subsumed within the essence test standard of review is the requirement that the arbitrator's interpretation of the agreement cannot be manifestly unreasonable. *Board of Education of the School Dist. of Philadelphia v. Philadelphia Fed'n of Teachers, AFL–CIO,* 147 Pa.Commonwealth Ct. 15, 610 A.2d 506 (1992).

Article XV of the Agreement provides that employees shall not be discharged, suspended, furloughed, or transferred for disciplinary reasons without just cause, which is not defined in the Agreement. Section 514 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–514, provides, in part, that a school district shall after due notice have the right at any time to remove an employee for violation of any of the school laws of this Commonwealth or other improper conduct. Section 1122 of the School Code, 24 P.S. § 11–1122, provides, in part: "The only valid causes for termination of a contract . . . entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, . . . [or] persistent and wilful violation of the school laws of this Commonwealth."

■ The only issue before the arbitrator in the present matter was whether the School District had just cause for dismissing Luczak and Miller. The requirement of just cause for discharge does not infringe upon the prerogative of a school district to adopt and enforce regulations regarding the conduct of its employees. *Board of Education of the School Dist. of Philadelphia v. Philadelphia Fed'n of Teachers Local*

*No. 3*, 464 Pa. 92, 346 A.2d 35 (1975); *Philadelphia Fed'n of Teachers, AFL–CIO.* "Immorality" under Section 1122 of the School Code may include lying and/or making false statements to school district staff. *Balog v. McKeesport Area School Dist.*, 86 Pa.Commonwealth Ct. 132, 484 A.2d 198 (1984). A teacher's misrepresentations regarding his or her unexcused absences are properly the subject of immorality charges and may also be considered in the context of "persistent and wilful" misconduct. *Bethel Park School Dist. v. Krall*, 67 Pa.Commonwealth Ct. 143, 445 A.2d 1377 (1982), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983). Persistency may be characterized by either a violation occurring as a series of individual events, or as one incident carried on for a period of time. *Lucciola v. Secretary of Education*, 25 Pa.Commonwealth Ct. 419, 360 A.2d 310 (1976).

■ The present matter is similar to *Lucciola* in which this Court sustained the dismissal of a teacher who voluntarily misused personal business and sick leave privileges to go on a one-week ski trip in Vermont, and held that the incident amounted to persistent and willful violation of the school laws. Luczak and Miller's requests for leave had been denied by the superintendent, whose decisions were upheld by the School District and were not further appealed. Nevertheless, Luczak and Miller continued to plan their trip even before obtaining the letters from psychologist Morris. Moreover, Luczak and Miller had the opportunity to present Morris' letters to the superintendent prior to going on their ski trip but chose not to do so, instead presenting the letters as after-the-fact justification of their use of sick leave.

■ In addition, Morris' letters neither referred to the dates in question nor stated that Luczak or Miller were unable to perform their duties. Section 1154 of the School Code provides that where an employee is prevented by illness or accidental injury from following his or her occupation, the school district may require the employee to furnish "a certificate from a physician or other practitioner certifying that said employe *was unable to perform his or her duties during the*

*period of absence*" in question (emphasis added). Section 1154 further provides that school boards may adopt rules or regulations regarding salary payments to employees absent from duty. Pursuant to this section, the School District adopted Policy No. 434 which provides, in pertinent part, that the school board "reserves the right to require of any employee claiming sick leave pay sufficient proof, including a physician's certification, of the employee's illness or disability." On the certification of absence forms that Luczak and Miller submitted after their ski trip, the employee is required to attach a physician's certificate if an absence is for three or more consecutive days. Neither Luczak nor Miller submitted proof that they were prevented by illness from being at work, and neither presented a certificate from a physician as required by School District policy, but instead submitted letters from psychologist Morris. These letters failed to meet the requirements of the School District's policy and the School Code.

In this case, the arbitrator made no findings of fact contrary to those asserted by the School District as supporting its charge of misconduct. The arbitrator nonetheless held that the absences were justified as sick leave and placed a burden upon the School District that it should have required Luczak and Miller to provide proof from a physician, a burden which cannot be found in either the Public School Code or the Agreement. Luczak and Miller's actions, as found by the arbitrator, substantiate the School District's charges. Inasmuch as the School District's function includes, among other things, insuring the morality of its employees, *Manheim Central Education Ass'n*, it is therefore manifestly unreasonable to conclude that the School District could have intended to bargain away its absolute responsibility to insure the integrity of its educational mission by discharging an employee who commits improper conduct. *Philadelphia Fed'n of Teachers, AFL–CIO*. Once the arbitrator found that Luczak and Miller committed the conduct charged, the question of appropriate discipline was a matter reserved by the Agreement and applicable law to the employer. *Musser; Independent State Stores Union*.

The arbitrator determined that the utilization of sick leave by both employees was proper and therefore the dismissals were without just cause. The record shows however that the grievants' conduct violated provisions of the School Code and School District policy, thus establishing just cause and reserving the question of appropriate discipline solely to the School District. Accordingly, the trial court's order is reversed, the arbitrator's award is vacated, and the School District's dismissals of Luczak and Miller are reinstated.

## ORDER

AND NOW, this 25th day of March, 1994, the order of the Court of Common Pleas of Allegheny County is reversed, the arbitrator's award is vacated, and Riverview School District's dismissals of Paulette Luczak and Brian Miller are reinstated.