IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections, :
                Petitioner :
 :
     v. : No. 802 C.D. 2018
 : ARGUED: April 11, 2019
Pennsylvania State Corrections :
Officers Association, :
                Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: May 13, 2019

      The Pennsylvania Department of Corrections (Department) petitions for review of an arbitrator's award entered May 15, 2018. The arbitrator found the Department had just cause to demote and transfer Corrections Officer Edward Patla (Patla). Accordingly, the arbitrator denied the grievance asserted on Patla's behalf by the Pennsylvania State Corrections Officers Association (Union). Nonetheless, the arbitrator ordered the Department to provide Patla with an opportunity for reinstatement to his former position. After thorough review, we affirm the arbitrator's award in part and vacate it in part.

## I. Background

      Patla began working for the Department in 1997 as a Corrections Officer 1 ("CO1") at the State Correctional Institution in Dallas (SCI-Dallas). In 2006, he

attained the rank of sergeant as a Corrections Officer 2 ("CO2") in conjunction with joining the Department's K-9 Unit. All K-9 Unit members hold at least the rank of sergeant and the position of CO2. Patla held that rank and position until 2016.

Patla's CO2 position with the K-9 Unit required him to work without supervision and to rotate among various state correctional institutions. With his assigned canine, he performed security search activities, including searches of inmates' cells, visitors' vehicles, and any other areas as needed by each institution.

In late 2015, one institution reported to the Department that Patla had failed to arrive for his assignment there. The Department's inquiries into the situation revealed that Patla had failed to report to work at various institutions on seven dates during the second half of 2015. He had not informed his supervisor of his absences and had not submitted leave slips relating to those absences. He had also traveled to SCI-Dallas on various dates without documenting the trips or recording his mileage.

In addition, the Department learned Patla had repeatedly violated Department search protocols. The violations included performing inadequate cell and vehicle searches, failing to notify correct personnel on arriving at an institution, making unilateral decisions on where to search rather than working where the institution needed him, and failing to take along a witness during searches.

Based on the results of its investigation, the Department charged Patla with multiple violations of its Code of Ethics and its K-9 Unit policy. Department personnel met with Patla on two occasions to provide him an opportunity to respond to the charges or offer any mitigating circumstances. Thereafter, finding the charges

were substantiated, the Department demoted Patla to his original CO1 position and transferred him back to SCI-Dallas.[1]

The Union filed a grievance on Patla's behalf, challenging his demotion and removal from the K-9 Unit. After the grievance procedure set forth in the collective bargaining agreement failed to resolve the grievance, the parties proceeded to arbitration. The parties stipulated to the precise issue to be presented to the arbitrator: "Whether the [Department] has disciplined [Patla] for just cause, and, *if not*, what restitution is to be made." Notes of Testimony (N.T.), 1/3/18, at 11 (emphasis added).

The arbitrator held a hearing in January 2018. In May 2018, the arbitrator issued his decision and award.

The arbitrator noted that Patla suffered a seizure in June 2015. His neurologist diagnosed some short-term memory loss, but nonetheless cleared Patla to return to work. He returned to work in August 2015.

The arbitrator found Patla committed the infractions enumerated by the Department, and those infractions had negative security consequences at the correctional institutions. The arbitrator concluded Patla's failures to follow Department protocols prevented the correctional institutions from directing him to the areas where searches were needed, prevented the presence of witnesses when contraband was found, and left inmates uncontrolled while their cells were being searched. The arbitrator observed that closed circuit videos showed Patla's cell searches on at least 2 days averaged only 8 seconds each, although a correctly

---

[1] Of significance, in its letter notifying Patla of the demotion and transfer, the Department pointed out that Patla had previously incurred a one-day suspension in 2010 for violations of the same search policies. Reproduced Record (R.R.) at 308a.

performed search would take 15 to 30 seconds. Patla also failed to search several required areas of a vehicle.

The arbitrator expressly concluded: "The [Department] has shown just cause to demote and transfer Patla, on this record."[2] Op. and Award, 5/15/18, at 7. In support of that conclusion, the arbitrator stated, "Patla's position as a K-9 Sergeant involved discovering contraband in state prisons. The repercussions of doing that job in a shoddy manner cannot be over[-]emphasized." *Id.*

The arbitrator further noted that in Patla's fact-finding interview, he was asked about his absences and deficient searches and "offered no reasons" in response, although he acknowledged he did know correct search procedures. *Id.* at 8. Significantly, the arbitrator found Patla never told the Department he was suffering any ongoing effects related to his 2015 seizure. The arbitrator stated, "Some responsibility must fall on Patla for never simply informing the [Department] of his continuing memory difficulties." *Id.*

Concerning Patla's hearing testimony, the arbitrator observed:

> When testifying, Patla was quick to explain that he wasn't "playing horse shoes [*sic*] and stuff," or "partying" during his unexcused absences, but rather, he had no recollection of what he did during those days. On cross examination he was asked the obvious question[:] if he had no memory of his actions on those days, how could he be so sure what he wasn't doing? Patla had no explanation. (N.T. 234.)

---

[2] A theft of time in the form of seeking payment for time not worked constitutes just cause for termination. *City of Easton v. Am. Fed'n of State, Cty. & Mun. Emps.*, 756 A.2d 1107 (Pa. 2000), *overruled in part on other grounds by Phila. Hous. Auth. v. Am. Fed'n of State, Cty. & Mun. Emps.*, 52 A.3d 1117 (Pa. 2012).

*Id.* at 9. Further, the arbitrator rejected the Union's attempt to link the timing of Patla's seizure to his deficient searches and unexplained absences, noting that "[c]orrelation . . . does not establish causation." Op. and Award at 8-9.

Finally, the arbitrator concluded: "There is nothing on this record to establish that Patla, absent constant supervision, will perform with the proficiency as he had in the past." *Id.* at 9. Therefore, the arbitrator issued an award expressly denying the Union's grievance. *Id.* at 10.

However, despite his denial of the grievance and his lengthy explanation of his finding of just cause, the arbitrator posited that Patla's "twenty-year record with the [Department] cannot be ignored." *Id.* at 9. Apparently based on that single sentence, the arbitrator added a provision to his award, ordering the Department to allow Patla to reapply for his prior K-9 sergeant position, and to reinstate him if he can successfully meet the requirements of that position. *Id.* at 10.

This appeal followed.

## II. Issue

The Department contends the arbitrator's award is not rationally derived from the parties' collective bargaining agreement. The Department argues the arbitrator exceeded his authority by issuing an award outside the confines of the stipulated issue submitted by the parties. Further, the Department asserts that the arbitrator exceeded his authority and infringed on the Department's managerial right under the Pennsylvania Employe Relations Act (PERA)[3] to select and direct its workforce.

## III. Discussion

Our review of a grievance arbitration award under PERA is governed by the standard of review known as the "essence test." *Office of the Attorney Gen. v.*

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 - 1101.2301.

5

*Council 13, Am. Fed'n of State, Cty. & Mun. Emps.*, 844 A.2d 1217, 1222 (Pa. 2004). The essence test has two prongs. First, we determine whether the issue submitted to arbitration is encompassed within the terms of the collective bargaining agreement. Second, we determine whether the arbitrator's award can be rationally derived from the collective bargaining agreement. We must uphold the arbitrator's award if it can be rationally derived from the terms of the collective bargaining agreement. *Id.*

### A. The Submitted Issue

The parties' collective bargaining agreement provides, in pertinent part: "The [Department] shall not demote, suspend, discharge or take any disciplinary action against an employee without just cause." R.R. at 299a. The parties' stipulated issue for arbitration related directly to the question of just cause for an employee demotion. Thus, the issue submitted to arbitration was encompassed within the terms of the collective bargaining agreement. Therefore, the first prong of the essence test is satisfied.

### B. Propriety of the Award

### 1. The Arbitrator's Authority to Provide a Remedy

The Department argues the arbitrator exceeded his authority by issuing an award outside the confines of the stipulated issue submitted by the parties. The parties' stipulated issue was whether the Department had just cause for demoting and transferring Patla, and *if not*, what the proper remedy would be. Although the arbitrator found just cause, he nonetheless proceeded to provide Patla with a remedy by altering the Department's action. Therefore, the Department contends the arbitrator's award was not rationally derived from the parties' collective bargaining agreement. We agree.

6

"The jurisdiction of an arbitrator is restricted to resolving the dispute that the parties have submitted for arbitration." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 920 A.2d 989, 900 (Pa. Cmwlth. 2007) (*DOC I*) (citing *Bensalem Twp. Sch. Dist. v. Bensalem Twp. Educ. Ass'n*, 512 A.2d 802 (Pa. Cmwlth. 1986)). A stipulation of an issue to be arbitrated is a form of contract, and it determines the scope of the arbitration, under general contract principles. *Id.* (citing *Sley Sys. Garages v. Transp. Workers Union of Am.*, 178 A.2d 560 (Pa. 1962)). Moreover, if the parties' collective bargaining agreement confines arbitrations to the precise issues submitted, that contractual provision is binding. *Id.* at 901.

Here, the parties' collective bargaining agreement expressly limited arbitration to the issue submitted, providing in pertinent part: "The arbitrator shall be confined to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted." R.R. at 303a. That agreement was binding. *DOC I.*

The parties' stipulated issue first required the arbitrator to determine whether the Department had just cause to demote and transfer Patla; only if there was *not* just cause did the arbitrator have authority to consider a remedy. This was true under general contract principles based on the parties' agreement as to the issue, as well under the collective bargaining agreement. Accordingly, the arbitrator could not consider any remedy for the Department's disciplinary action unless the Department lacked just cause for that action.

Decisions in analogous cases have confirmed that an arbitrator lacks authority to modify an employer's disciplinary action that is supported by just cause. For example, in *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 553 A.2d 948 (Pa. 1989), a state store employee was suspended and later terminated

7

after he falsified store records and misappropriated funds. The union filed a grievance on his behalf, claiming he suffered from mental illness that caused his misconduct.

The collective bargaining agreement required "just cause" for disciplinary action. *Id.* at 950. The parties stipulated to the precise issue for arbitration: "Was the [g]rievant dismissed for just cause, and if not, what shall the remedy be?" *Id.*

Applying concepts of intent and culpability analogous to criminal law, the arbitrator found that the grievant's conduct resulted from mental illness and was not his fault. Therefore, the arbitrator concluded there was not just cause for termination. The arbitrator ordered the employer to reinstate the grievant and provide him with an opportunity to demonstrate his recovery and capability of responsible job performance.

This Court affirmed the arbitrator's award, but our Supreme Court reversed. Citing the agency's "fundamental responsibility to protect the integrity of its operation," our Supreme Court found:

> [T]he concepts of culpability and mitigation applicable in criminal law are not applicable to this area. In this setting the issue must be confined to the competency and ability of the employee to perform the tasks required by the position in which he is serving. The fact that the dereliction may not have been maliciously inspired or that at some future time the impediment which occasioned the unsatisfactory performance may be removed, has no place in the inquiry.

*Id.* at 953 (citing *Phila. Hous. Auth. v. Union of Sec. Officers #1*, 455 A.2d 625 (Pa. 1983)) (public employer had an absolute responsibility to ensure the integrity of its security force)).

Here, the Department is responsible for safety and security in Pennsylvania's correctional institutions. *See Iseley v. Beard*, 841 A.2d 168 (Pa. Cmwlth. 2004).

Thus, as in *Pennsylvania Liquor Control Board*, the Department has a responsibility to ensure the integrity of its security force. Consequently, as our Supreme Court concluded in *Pennsylvania Liquor Control Board*, the arbitrator was not permitted to consider whether Patla may have recovered his capability of performing his former job in the K-9 Unit. This is particularly true in light of the job requirement of unsupervised performance and the arbitrator's observation that Patla would need constant supervision.

In *Manheim Central Education Association v. Manheim Central School District*, 572 A.2d 31 (Pa. Cmwlth. 1990), a union filed a grievance after a teacher was dismissed for writing love letters to two female students. The collective bargaining agreement required "just cause" for disciplinary action. *Id.* at 33. The parties stipulated to the precise issue to be arbitrated: "Whether the grievant was discharged for just cause? If not, what shall the remedy be?" *Id.* at 34.

The arbitrator acknowledged that the grievant's conduct constituted "immorality" as that term was defined in the applicable statute. *Id.* at 32. However, the arbitrator noted, as mitigating circumstances, the grievant's exemplary employment record during the prior 20 years, as well as serious emotional and economic stress he was suffering during the time he wrote the letters. The arbitrator concluded immediate termination was too severe a penalty in light of the mitigating factors. The arbitrator ordered the district to allow the grievant to use all of his accumulated sick leave before the termination would be effective.

This Court determined that the arbitrator's finding of immorality equated to a finding of just cause. We observed that under the parties' stipulated issue, the arbitrator was to consider a remedy *only* if he determined there was *not* just cause for the grievant's dismissal. Citing *Pennsylvania Liquor Control Board*, we found

9

that once the arbitrator concluded there was just cause for the discipline imposed, his inquiry should have ended. Therefore, the arbitrator exceeded his authority by ordering a remedy after finding just cause.

Here, the arbitrator answered the parties' stipulated issue by finding the Department had just cause to demote and transfer Patla. We agree with the Department that having reached that conclusion, the arbitrator lacked authority to address the issue of a remedy.[4] *See Cent. Dauphin Sch. Dist. v. Cent. Dauphin Educ. Ass'n*, 767 A.2d 16 (Pa. Cmwlth. 2001) (citing *Pa. Liquor Control Bd.* and *Manheim Cent. Educ. Ass'n*).

Where an arbitrator exceeds his authority, his award cannot be rationally derived from the collective bargaining agreement. *Cent. Dauphin* (citing *Pa. Liquor Control Bd.* and *Manheim Cent. Educ. Ass'n*). Therefore, we agree with the Department that the arbitrator's award must be vacated to the extent that it purported to order the Department to provide an opportunity for reinstatement even though there was just cause for Patla's demotion and transfer.

### 2. The Department's Managerial Rights

In an alternative argument, the Department asserts that the arbitrator also exceeded his authority because his reinstatement directive impermissibly impinged the Department's managerial prerogatives, which are safeguarded by both the

---

[4] The Union insists that even though the arbitrator found Patla committed the misconduct charged by the Department, the arbitrator still had authority to alter the specific discipline imposed. As a general statement of law, the Union is correct that a factual finding of misconduct does not automatically equate to a legal determination of just cause. *See Office of the Attorney Gen. v. Council 13, Am. Fed'n of State, Cty. & Mun. Emps.*, 844 A.2d 1217 (Pa. 2004). However, that statement of the law has no application in this case. Here, the arbitrator did not merely find misconduct as a fact. Rather, he applied the legal principle of just cause to the facts surrounding Patla's conduct and its consequences to the affected institutions, and reached the express legal conclusion that there was just cause for the Department's demotion and transfer of Patla.

10

collective bargaining agreement and PERA. In light of our disposition of the Department's other argument, we need not reach this issue. However, we address it briefly in the interest of completeness. We agree with the Department.

In support of its argument, the Department cites *Pennsylvania Department of Corrections v. Pennsylvania State Corrections Officers Association*, 173 A.3d 854 (Pa. Cmwlth. 2017) (*DOC II*). In that case, the grievant, a corrections officer, was discharged for misconduct in the course of his supervision of inmates working in a prison kitchen. An arbitrator found the Department had just cause to discipline the grievant, but not to discharge him. The arbitrator reduced the discharge to a suspension and directed the Department not to assign the grievant to supervise inmates on his return. However, supervision of inmates is fundamental to the Department's operations and is a duty common to all its corrections officers. Restricting the Department's placement of a corrections officer to positions not requiring inmate supervision would severely undermine the employee's usefulness. This Court therefore vacated the arbitrator's award, finding that it infringed the Department's managerial rights because it "effectively created a second class of corrections officers, one with less utility to the Department . . . ." *Id.* at 859.

Here, the arbitrator specifically found: "There is nothing on this record to establish that Patla, absent constant supervision, will perform with the proficiency as he had in the past." Op. and Award at 9. The arbitrator thus acknowledged that Patla could not perform as a sergeant in a CO2 position with the K-9 Unit without "constant supervision." *Id.* However, the record indicates that position consists almost completely of unsupervised work. Thus, as in *DOC II*, the arbitrator's award imposes a directive at odds with the fundamental nature of the position at issue. In consequence, as in *DOC II*, the award impinges the managerial rights retained by

11

the Department, under both the collective bargaining agreement and PERA, to select and direct its employees.

## IV. Conclusion

The arbitrator expressly determined the Department had just cause for demoting and transferring Patla. The arbitration award expressly denied the Union's grievance. Therefore, the arbitrator's reinstatement directive exceeded his authority by going beyond the scope of the parties' stipulated issue submitted to him. Accordingly, we conclude that the portion of the arbitration award ordering the Department to reinstate Patla if he met the K-9 Unit $CO_2$ requirements was not rationally drawn from the collective bargaining agreement.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,        :
Department of Corrections,           :
                  Petitioner           :
                            :
      v.                     :  No. 802 C.D. 2018
                            :
Pennsylvania State Corrections       :
Officers Association,                 :
                  Respondent          :

# **O R D E R**

AND NOW, this 13th day of May, 2019, the portion of the arbitration award denying the grievance of the Pennsylvania State Corrections Officers Association on behalf of Edward Patla (Patla) is AFFIRMED. The portion of the arbitration award directing the Department of Corrections to allow Patla to reapply for a K-9 Unit position, and to reinstate him if he meets the qualifications for that position, is VACATED.

                                        _____

                                        ELLEN CEISLER, Judge